FARMERS INSURANCE EXCHANGE,
Appellant,

v.

John F. SIPPLE, Respondent,

Andrew R. Baud, Respondent.

No. 46693.

Supreme Court of Minnesota.

May 27, 1977.

Hansen Dordell & Bradt, William M. Bradt, and Gene P. Bradt, St. Paul, for appellant.

Tuveson & Goldman, and Bob A. Goldman, Albert Lea, for Sipple.

Walbran Walbran & Walbran, and John P. Walbran, Frederick J. Hough, Owatonna, for Baud.

Heard before TODD, YETKA, and STAHLER, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appellant Farmers Insurance Exchange appeals from an order denying its motion for a new trial following a jury trial in a declaratory judgment action in district court in which it was determined that one of its homeowners policies covered an assault by the insured on a third person. We affirm.

Appellant insured Andrew Baud under a homeowners policy. The policy covered personal liability for bodily injury for each occurrence in the amount of $25,000, but contained "business pursuits" and "intentional acts" exclusion.

The insured, Baud, was employed by the State of Minnesota Highway Department as a senior highway technician, assigned to a project involving the construction of an interstate highway near Albert Lea, Minnesota. On April 27, 1973, Baud had occasion to meet with John Sipple, a local farmer who thought the construction of the roadbed for the yet-to-be-completed highway created drainage problems on his land. While viewing the Sipple farm, the two men exchanged heated words, and Baud struck Sipple with his fist and injured him.

After the altercation, Sipple brought an action against Baud for damages for personal injuries. In response, the insurance company instituted a separate declaratory judgment action against both parties to determine its obligation to defend or indemnify Baud.[1] At the close of evidence the court ruled as a matter of law that Baud had assaulted Sipple. At the same time, the court determined as a matter of law the "business pursuits" exclusion did not apply. The following special verdict was submitted to the jury: "Did Andrew R. Baud either

expect or intend bodily injury to occur when he struck John F. Sipple?" The jury found he did not. This finding made the "intentional acts" exclusion inapplicable.

The issues presented on appeal are:

(1) Whether the trial court erred in finding that the "business pursuits" exclusion was not applicable under the facts of this case.

(2) Whether the trial court erred in submitting the issue of intent to the jury with respect to the applicability of the "intentional acts" exclusion.

1. *Application of the "Business Pursuits" Exclusion.*

The "business pursuits" exclusion provides that the policy does not apply—

"to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits."

The trial court found the application of the "business pursuits" exclusion involved only a question of law, ruled that the exclusion was ambiguous, and construed it against the insurance company.

This court recently considered the application of an identical exclusion in *Milwaukee Mut. Ins. Co. v. City of Minneapolis*, Minn., 239 N.W.2d 472 (1976).[2] Just prior to the start of his shift a police officer accidentally shot a fellow officer with his service revolver. The insurance company argued the conduct of the officer came within the exclusion in his homeowners policy for business activities. The trial court found the accident arose out of the officer's business pursuits, but the activity causing

1. Determining the liability of an insurance company in separate proceedings avoids placing the defense counsel in circumstances where he might encounter difficulty defending the interests of both the insurer and the insured, as was the situation in *Newcomb v. Meiss*, 263 Minn. 315, 116 N.W.2d 593 (1962).

2. The only other case in which this court had occasion to construe the "business activities" exclusion was *Allied Mutual Casualty Co. v.*

*Askerud*, 254 Minn. 156, 94 N.W.2d 534 (1959), which held the exclusion contemplates exclusion of liability for a type of activity in which persons are regularly engaged for the purpose of livelihood or for gain, such as a trade, profession, or occupation, and does not apply to afterhour endeavors of the insured which are unrelated to a commercial enterprise. See, also, Annotation, 48 A.L.R.3d 1096, 1100.

the injury—the handling of a pistol—was ordinarily incident to nonbusiness pursuits, such as hunting, weapon collecting, or target shooting. On appeal this court affirmed. While we noted the policy clause should be construed with reference to the particular facts of each case, we also noted the following general principles, quoting from Frazier, *The "Business Pursuits" Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It,* 1970 Ins.L.J. 519, 533:[3]

> " 'There seems almost unanimous accord in the decisions that the location at which an act is performed is not decisive on the question of whether the act constitutes part of an excluded business pursuit. Rather, it is the nature of the particular act involved and its relationship, or lack of relationship, to the business that controls. Personal acts, such as pranks, do not become part of a business pursuit, so as to be outside of the coverage, merely because performed during business hours and on business property. In order for an act to be considered part of a business pursuit it must be an act that contributes to, or furthers the interest of, the business and one that is peculiar to it. *It must be an act that the insured would not normally perform but for the business, and must be solely referable to the conduct of the business.'* (Italics supplied.)" 239 N.W.2d 476.

■ Although decided before *Milwaukee Mutual,* the decision of the trial court is consistent with its principles. The assault by the insured arose out of a business setting; however, the assault sought to be excluded by the "business pursuits" clause was not an act peculiar to the business activities of the insured.[4] Thus, the exclusion does not apply.

3. See, also, Annotation, 48 A.L.R.3d 1096.

4. Cf. *Pitre v. Pennsylvania Millers Mut. Ins. Co.,* 236 So.2d 920 (La.App.1970) (use of auger on job); *Berry v. Aetna Cas. & Surety Co.,* 221 So.2d 272 (La.App.1969) (operation of forklift at work).

## 2. Application of the "Intentional Acts" Exclusion.

The homeowners general liability policy issued to Baud excludes—

> " * * * bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The purpose of an "intentional acts" exclusion is to prevent extending to the insured a license to commit wanton and malicious acts. *Brasseaux v. Girouard,* 269 So.2d 590, 596 (La.App.1972), certiorari denied, 271 So.2d 262 (La.1973). See, generally, Annotation, 2 A.L.R.3d 1238.

We have construed this type of exclusion on several previous occasions. In *Hartford Fire Ins. Co. v. Wagner,* 296 Minn. 510, 207 N.W.2d 354 (1973), an insurance company brought a declaratory judgment action to determine whether an "intentional acts" exclusion in a homeowners policy covered an assault with a gun. A person aimed a .22-caliber rifle at another person's stomach and fired, intending only to wound him; instead, the person died. This court held the exclusion applied, stating:

> " * * * It is argued by appellants that [the policy's] language is vague, misleading, and ambiguous, and that the doctrine governing adhesion contracts should apply. We do not agree. *This is not a case where the act was intended but the injury was not.* If we accept [the insured's] testimony, the injury * * * was intended but its severity was not. Under such circumstances, we find no compelling reason either as a matter of public policy or as a matter of law to hold the exclusion inapplicable. *Pendergraft v. Commercial Standard Fire & Marine Co.,* 342 F.2d 427 (10 Cir. 1965)." (Italics supplied.) 296 Minn. 511, 207 N.W.2d 355.[5]

5. Accord, *Continental Western Ins. Co. v. Toal,* Minn., 244 N.W.2d 121 (1976) (extensive discussion of "expected or intended" injury within meaning of policy exclusion).

Another case in which this court considered the application of the "intentional acts" exclusion is *Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973). The insured was unable to find his coat in a restaurant after he had finished eating and asked the hatcheck girl for permission to enter the checkroom. When she objected, he pushed her lightly. She lost her balance and struck her back against a metal message rack attached to the wall. The injured employee brought an action for damage, and the insurance company argued the intentional acts exclusion in the insured's homeowners policy precluded coverage. The trial court submitted the question whether the insured intentionally caused the injury to the jury. They found he did not. Based on this finding the trial court held the exclusion applied. On appeal, we reversed on that issue, stating:

"Construing the provision in favor of the insured, we hold that the exclusion does not relieve the insurer of liability unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application. Cf. *Hartford Fire Ins. Co. v. Wagner*, 296 Minn. 510, 207 N.W.2d 354 (1973). In an annotation on this subject in 2 A.L.R.3d 1238, 1241, it is observed that the courts have generally held:

'" * * * [I]t is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm to a third person; it is the harm itself that must be intended before the exclusion will apply. There is, however, some authority for the proposition that such a clause will operate to relieve a liability insurer of its duty to indemnify * * * where the nature or character of the act is such that an intent to cause harm is thereby inferred as a matter of law.'

"Under this reasoning, *an assault and battery would not come within the exclusion unless a reason for the act is to inflict bodily injury or when the character of the act is such that an intention to inflict an injury can be inferred*. Defendant's conduct in this case does not indicate an intention to cause bodily injury to plaintiff although he did intend the act which caused her injuries. The jury specifically found that defendant did not intend to injure plaintiff. We therefore hold that the exclusion did not relieve the company of liability under the policy." (Italics supplied.) 298 Minn. 98, 213 N.W.2d 330.

The insurance company on appeal contends that the issue whether the assault by Baud upon Sipple was an intentional act was a question of law and that the trial court improperly submitted the issue of intent to the jury.

■ We hold that under the particular facts of this case the trial court was correct in submitting the issue of whether the injury was either expected or intended to the jury. The facts were in dispute. Sipple testified that he had not turned suddenly nor advanced menacingly toward Baud. Baud, on the other hand, testifies as follows:

"Q What did you think when he turned around and said ["you sons of bitches"] to you?

"A I didn't. It was more of a reflex.

"Q Did you think he was going to attack you?

"A No, not really. I don't know, it just seems like he came right to me.

"Q Did it make you angry?

"A I was angry, but I didn't have any intentions of hurting the man. I think he was more angry than I was.

"Q You intended to hit him, but you didn't intend to hurt him?

"A I did not intend to hit him. I came up and I didn't intend to hurt him. In fact, I don't think I did hurt him.

"Q Did you lose control of your bodily reflexes at that point?

"A If I would have lost control—

"Q Did you hit him?

"A Yes.

"Q Did you hit him with your right hand or your left hand?

"A Left hand.

"Q Was your fist opened or closed?

"A It was like this (indicating).

"Q Are your right-handed or left-handed?

"A Right-handed.

"Q Were you holding anything at the time?

"A No.

"Q And you didn't intend to hit the man?

"A That's correct.

"Q This was just a reflex action over which you had no control at that point?

"A Correct.

"Q You think you did it because you were mad?

"A No.

"Q Why do you think you did it?

"A Like I said, the man came at me and it was just more or less a defense.

"Q Were you trying to stop him from coming at you further?

"A Correct.

"Q The best way to do that is to strike him in the face?

"A I have never done this before, but it was one of those things."

Appellant at oral argument admitted that if an insured acted in self-defense the exclusion would not apply. Also, if Baud's testimony is to be believed, there is doubt he had any time to form an intent, but rather acted instinctively in the form of a reflex. Accordingly, the question of intent was properly presented to the jury.

Based on its own determinations and the jury's finding, the trial court ordered the complaints against defendants dismissed with prejudice and awarded costs and disbursements to defendants and attorneys fees to defendant Baud.

Affirmed.