Bruce SMITH, Respondent,

v.

Scott SENST, Respondent,

Ross Muir, d/b/a Whitewater
Tower, Respondent,

Citizens Security Mutual Insurance
Company, garnishee, Appellant.

Nos. 49100, 51605.

Supreme Court of Minnesota.

Dec. 17, 1981.

Holst, Vogel, Erdmann & Vogel, George
F. Vogel and Kevin F. Mark, Red Wing, for
appellant.

Peterson & Thompson and Duane M. Pe-
terson, Winona, for Smith.

Dingle & Suk and Charles Suk, Roches-
ter, for Senst.

Streater, Murphy, Gernander & Beerling
and Kent A. Gernander, Winona, for Muir.

Gross, Von Holtum, Von Holtum, Sieben
& Schmidt and David A. Stofferahn, Minne-
apolis, and Adrian Herbst, Bloomington, for
Minnesota Trial Lawyers Ass'n.

OTIS, Justice.

This is a consolidated appeal from an
order and a judgment of the district court
in two different proceedings. In Case
41900, Citizens Security Mutual Insurance
Company ("Citizens") appeals from an or-
der of the district court denying its motion
to reopen the judgment entered against its
insured, Scott Senst, pursuant to a negli-
gence action commenced by Bruce Smith.[1]
The appeal in Case 51605 rises from a gar-
nishment proceedings initiated by Smith for
satisfaction of the judgment entered
against Senst. The trial court determined
coverage under Senst's homeowners insur-
ance policy was not precluded by an inten-
tional injury exclusionary clause and en-

1. Citizens refused Senst's tender of the defense.

tered judgment against Citizens for $25,-000.[2] We reverse.

On the evening of September 30, 1976, the insured, Scott Senst, was drinking shots of whiskey and chasers of beer with a group of friends at the Whitewater Tavern in Beaver, Minnesota. During the evening a pipe containing hashish or marijuana was lit and passed among the group. The bartender told the group to put the pipe away. The group continued to smoke and pass the pipe. Twice more the bartender instructed the group to put the pipe away and again, the bartender's instructions were ignored. Irritated that his directions were ignored, the bartender confronted the group in order to take the pipe from them. The evidence is conflicting as to what occurred next. The bartender testified that the pipe fell to the ground as he attempted to take it from Ryan, the person holding the pipe. After he picked the pipe up, Senst grasped him around the waist to enable Ryan to retake the pipe. Senst testified he believed the bartender was "grabbing and manhandling" Ryan and he took hold of the bartender in a "bear hug" fashion to pull him away. In any event, Smith, an onlooking customer, came to the aid of the bartender by pulling Senst off the bartender and pushing him about eight feet away from the scuffle. Senst did not fall. Senst returned to where Smith was standing and hit Smith in the face fracturing his jaw.

■ Citizens claims that the trial court erred in determining the homeowners insurance policy, which excludes coverage of "bodily injury which is either expected or intended from the standpoint of the insured", provided coverage. We agree.[3]

■ The intentional injury exclusionary clause precludes coverage when the insured acts intending to inflict injury. Intent to

injure may be inferred from the character of the act or established by proof of an actual intent to injure. *See Caspersen v. Webber,* 298 Minn. 93, 213 N.W.2d 327 (1973).

The facts in this case are similar to, but nevertheless distinguishable from, those in *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822 (Minn.1980) and *Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373 (Minn.1977). In both *Brown* and *Sipple* we held the question of whether the insured intended to inflict injury was for the trier of fact.

The insured in *Brown,* having misplaced a baggage claims ticket, took a piece of his luggage without producing the claims ticket. The baggage claims clerk pursued the insured; an argument and a tug-of-war developed over the luggage. The tugging caused a deep cut in the insured's finger and the insured reacted by striking the clerk in the head with his open hand.

In *Sipple* a farmer engaged the insured, a highway engineer, in a discussion about the drainage problems caused by the highway. The discussion soon became heated. The insured testified that the farmer called him a "son of a bitch" and "came at" him and that his hitting the farmer in the face was "more or less a defense" and "just a reflex action." 255 N.W.2d at 376–77. We stated, based on this testimony, that the trier of fact could conclude the insured did not have "any time to form an intent, but rather acted instinctively in the form of a reflex" or that the insured had acted in self defense. *Id.* at 377. The trier of fact, therefore, could determine that the insured did not intend to injure the farmer. *Id.*

Unlike the insureds in *Brown* and *Sipple,* Senst voluntarily entered the dispute between the bartender and Ryan. Prior to

---

**2.** Senst was insured under his parents' homeowners insurance policy.

**3.** Citizens presents three other issues for review: first, whether the trial court erred in entering judgment against the insured for the amount of the stipulated damages when there was no medical evidence substantiating the extent of injuries; second, whether in a garnish-

ment proceeding an insurer can challenge the amount of damages stipulated in a settlement between the insured and injured party; finally, whether a jury trial is available in a garnishment proceeding. Since we determine that the intentional injury clause precludes coverage, it is not necessary to consider these issues.

hitting Smith, Senst was completely removed from the scuffle. His act of striking Smith was unnecessary to protect himself and lacked the spontaneity inherent in a reflex action. To find the insured's act was a reflex or for purpose of self defense would be inconsistent with the purpose of intentional injury exclusionary clauses, namely, to prevent extending to the insured a license to commit wanton and malicious acts. We therefore conclude the trial court erred in determining coverage existed.

Reversed.