WESTERN FIRE INSURANCE COMPANY, Respondent,

v.

James R. PERSONS, Respondent,

Mark Henry Duwal, Appellant,

Howard Johnson Company, et al., Respondents.

No. C7–86–73.

Court of Appeals of Minnesota.

Sept. 16, 1986.

George W. Flynn, Kari L. Anderson, Faegre & Benson, Minneapolis, for Western Fire Ins. Co.

James R. Persons, pro se.

J. Kevin McVay, McVay and O'Connor, Minneapolis, for Duwal.

Michael S. Kreidler, Lasley, Gaughan, Stich & Angell, P.A., Minneapolis, for Howard Johnson Co. et al.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Mark Duwal appeals from an order denying his motion for new trial and from a judgment that his injuries were not covered by an insurance policy issued by respondent because they resulted from an intentional act of the insured. We reverse.

## FACTS

Respondent Western Fire Insurance Company (Western) insured James Persons under a homeowner's policy. The policy stated that the company would defend Persons if a suit was brought against him. The policy excluded coverage for "bodily injury * * * which is expected or intended by the insured." Under the heading "additional coverages," the policy stated that the company would pay "reasonable expenses incurred by any insured at our request * * *."

On July 13, 1983 Persons shot appellant Mark Duwal in the parking lot of the Howard Johnson's Motel in Bloomington, Minnesota. The record reflects two main versions of the facts leading to the shooting incident.

James Persons, senior vice-president of a major bank in Eau Claire, Wisconsin, testified that on the night of the shooting he was staying at the Howard Johnson's Motel while on business. Persons further testified that he went for a walk that evening after having drunk beer in the motel bar. While walking through the motel parking lot he heard a woman scream. He obtained a derringer loaded with birdshot from his van and rushed to where the noise had come from. Persons claimed that after he approached the woman appellant Mark Duwal attacked him. Persons further indicated that he fired a first shot to scare away his assailant and a second shot to unload the gun, so as to prevent the assailant from using the gun against him.

Duwal testified that Persons confronted him and two women in the motel parking lot that night. Persons approached the women, asked which one was for him, and then, at Duwal's suggestion, walked away. Duwal claimed that Persons then spun around to a shooting stance and shot him in the hip. Duwal then attempted to disarm his attacker, whereupon he was shot in the palm of his hand.

Duwal commenced a tort action against Persons on January 12, 1984, alleging negligence and/or intentional tort. The tort action also named as defendants Howard Johnson Company and its bartender Deonne Wilkins, alleging a dram shop violation. Respondent Western, the homeowner's liability insurer of defendant Persons, agreed to defend the tort action with a reservation of rights, selecting and paying attorney Robert Austin to represent Persons. The tort action was certified ready for trial on February 8, 1985. In May 1985, Western commenced a declaratory judgment action, alleging that Persons intended to injure Duwal and that therefore coverage was excluded.

The trial judge held a pre-trial conference for the tort action on July 23, 1985. Counsel for Western attended the conference to discuss the relationship between the declaratory judgment and tort actions. The judge indicated that if both cases were assigned to him after a calendar motion hearing to the chief judge, he would proba-

bly try the cases together. Neither Persons nor Austin, the attorney hired by Western to represent Persons, attended this conference. The chief judge, upon a motion by Western, consolidated both cases before the trial judge.

The trial judge called both cases for trial on Friday afternoon, September 27, 1985. All attorneys for both cases appeared. Persons did not appear because Austin had arranged for him to meet in Austin's office on the following Monday morning, the day it was expected the trial would actually begin.

Western moved for sequential trials in a motion dated September 26, requesting that the court try the declaratory judgment action first. At the hearing, Austin joined in the motion arguing that such procedure would avoid conflict of interest and prejudice to the parties and further judicial economy. Appellant's counsel argued against severing the cases and pointed out that Persons would not have an attorney on the declaratory judgment action if the court were to grant the motion. The trial judge granted the motion and set trial on the declaratory judgment action to commence on Monday afternoon, September 30.

At trial the primary issue was whether or not Persons' shooting of Duwal fell under the provision of Persons' homeowner's insurance policy excluding coverage for "bodily injury * * * which is expected or intended by the insured." Persons, appearing pro se, and appellant's counsel disputed respondent counsel's claim that Persons' actions resulted in bodily injury which was expected and intended. If respondent's claim was correct, the incident would not be covered by the insurance policy issued by respondent.

Additionally, appellant requested a special jury instruction providing for self-defense as a possible bar to application of the insurance policy's exclusionary provision. The trial court rejected such an instruction.

The jury found that James Persons expected or intended bodily injury to occur when he fired the two shots. Judgment was entered that the insurance policy did not afford Persons coverage for the shooting incident and that Western had no obligation to defend and/or indemnify Persons in the tort action. The trial court denied appellant's motion for new trial and judgment notwithstanding the verdict.

## ISSUES

1. Did the trial court properly act within its discretion in severing the declaratory judgment action from the tort action?

2. Did the trial court err by failing to instruct the jury as to self-defense as a possible bar to application of the exclusionary provision of the insurance policy?

## ANALYSIS

■ 1. Appellant argues that the trial court abused its discretion in severing the declaratory judgment action from the tort action on the day of trial. Initially, we must recognize the long-standing policy of encouraging resolution of insurance coverage disputes in separate declaratory judgment actions. *Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 249 n. 3 (Minn.1982). The trial court may order a separate trial of any issue for convenience, to avoid prejudice, or to serve the interest of expedition and judicial economy. Minn.R.Civ.P. 42.02. On the other hand, consolidation may be properly ordered when actions pending before the court involve "a common question of law or fact." Minn.R.Civ.P. 42.01. Questions of consolidation and severance rest within the sound discretion of the trial court. *Fitzer v. Bloom*, 253 N.W.2d 395, 401–02 (Minn. 1977). The trial court must balance convenience against the possibility of prejudice. *Id.* at 402. The court may sever the actions for trial if undue confusion might otherwise result. *Id.*

The trial court concluded that the actions should be severed to avoid the conflict that may result from requiring the insurer to take two positions at trial: defending the insured in the tort action and defending itself on the coverage action. In the interest of judicial economy and to minimize possible prejudice to both parties, the court decided to first try the declaratory judgment action. We cannot say the trial court abused its discretion in so holding. *See*

*Clemens v. Wilcox,* 392 N.W.2d 863 (Minn. 1986).

Appellant argues that *Glens Falls Group Insurance Corp. v. Hoium,* 294 Minn. 247, 200 N.W.2d 189 (1972) mandates that such coverage disputes be resolved at trial along with the underlying tort issues. Appellant claims that submission of a special verdict on the issue of intent is part of this mandated procedure. We disagree.

The language appellant cites in *Glens Falls* is dicta which, if given appellant's meaning, would be inconsistent with subsequent case law. In fact *Glens Falls* is distinguishable from the present case. The sole issue in *Glens Falls* was whether the insured's guilty plea to criminal assault charges estopped him from claiming coverage for a civil suit arising out of the same incident. After deciding the issue, the court then stated that because the trial court in the declaratory judgment action had not conclusively determined the issue of intent, but had merely held that the insurer had a duty to defend, the insurer could still deny coverage if the jury in the personal injury action found that the insured acted intentionally. *Glens Falls,* 294 Minn. at 251–53, 200 N.W.2d at 192. Clearly, *Glens Falls* does not mandate any special procedure for resolving insurance coverage issues and is distinguishable from the present case.

■ 2. Appellant argues that the trial court acted outside the proper boundaries of its discretion by failing to instruct the jury as to self-defense as a possible bar to application of the "expected or intended bodily injury" exclusionary provision of the insurance policy. At the outset we must recognize that failure to submit a requested instruction to the jury will generally not constitute grounds for a new trial if the charge given "fairly and correctly states the applicable law." *Gleeman v. Triplett,* 301 Minn. 504, 506, 222 N.W.2d 787, 788 (1974). Jury instructions must be construed as a whole to determine their total impact on the jury. *Lindstrom v. Yellow Taxi Company of Minneapolis,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). The

granting of a motion for a new trial on grounds of erroneous jury instructions rests largely in the discretion of the trial court, and its decision will not be disturbed on appeal absent a clear abuse of that discretion. *Id.* at 230, 214 N.W.2d at 677.

With this standard in mind we begin our analysis of the intentional acts exclusion provision with the policy underlying such provisions generally. The supreme court in *Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373, 375 (Minn.1977) was faced with a provision almost identical to the one at issue here. Both provided exclusion from coverage of "bodily injury * * * expected or intended." The court stated that "[t]he purpose of an 'intentional acts' exclusion is to prevent extending to the insured a license to commit wanton and malicious acts." *Id.*

One who has acted in self-defense has not used insurance coverage as a license to commit wanton and malicious acts. In fact, someone properly acting in self-defense is, by definition, not acting unreasonably. *See State v. Austin,* 332 N.W.2d 21, 24 (Minn.1983). That person is not committing conduct that the intentional act exclusionary provision is intended to discourage. Consequently, if an insured can plead and prove self-defense, this will bar exclusion from coverage under an intentional acts provision of the applicable insurance policy.

Furthermore, in *Sipple* the supreme court implicitly found the issue of self-defense relevant and necessary to the jury determination of intent under such an intentional acts provisions when the court wrote:

> Appellant at oral argument admitted that if an insured acted in self-defense the exclusion would not apply. Also * * * there is doubt he had any time to form intent, but rather acted instinctively in the form of a reflex. Accordingly, the question of intent was properly presented to the jury.

255 N..W.2d at 377.

The supreme court clarified this language in *Smith v. Senst,* 313 N.W.2d 202

(Minn.1981). Like *Sipple, Smith* involved application of an intentional acts exclusion. Explaining the holding in *Sipple,* the court wrote: "We stated [in *Sipple*] that the trier of fact could conclude the insured did not have 'any time to form an intent, but rather acted instinctively in the form of a reflex' or that the insured had acted in self-defense." *Smith,* 313 N.W.2d at 203 (quoting *Sipple,* 255 N.W.2d at 377). The supreme court indicated that if the jury in either *Sipple* or *Smith* had properly found that the insured acted reflexively *or* in self-defense, then the intentional act exclusionary provision would not apply. *Smith,* 313 N.W.2d at 203–04; *Sipple,* 255 N.W.2d at 377.

In the present case, the trial court denied appellant's request to instruct the jury as to self-defense. The instruction given provided that if the jury found "the acts of Mr. Persons in firing his gun were done instinctively or as a reflex, and without sufficient time to form intent, then you should find that Mr. Persons did not intend or expect to injure Mr. Duwal." The instruction did not include self-defense as a possible bar to application of the intention acts exclusionary provision.

We find that the trial court erred, exceeding the boundaries of its discretion, in failing to instruct the jury as to self-defense. The record contains evidence upon which the jury might have found a case of self-defense. The policy behind the exclusionary provision itself and the interpretative case law mandates that this issue should have been considered by the jury.

Since we reverse on the issue of jury instructions we find no need to reach the issues concerning Persons's lack of counsel at trial, the evidence as to the finding of intent with respect to the second shot, and the alleged ambiguity of the exclusionary provision itself.

### DECISION

The trial court did not abuse its discretion in severing the declaratory judgment action concerning insurance coverage from the underlying tort action. The trial court

erred in failing to instruct the jury as to self-defense as a possible bar to application of the intentional tort exclusionary provision of the insurance policy.

Reversed.