ECONOMY FIRE & CASUALTY
COMPANY, Appellant,

v.

Richard V. IVERSON, Orville M.
Olson, et al., Respondents.

No. C1–87–2234.

Court of Appeals of Minnesota.

June 14, 1988.

Review Granted July 28, 1988.

Kay Nord Hunt, Phillip A. Cole, Caryn F. Brenner, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Economy Fire & Cas. Co.

Thomas J. Hunziker, Dunkley, Bennett & Christensen, P.A., Minneapolis, for Richard V. Iverson.

Joseph F. Lyons–Leoni, Cloutier & Musech, Minneapolis, for Orville M. Olson, et al.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ.

## OPINION

FOLEY, Judge.

Appellant Economy Fire & Casualty Company appeals from a declaratory judgment action brought to determine coverage under its homeowner's policy. The trial court found Economy has a duty to defend and/or indemnify respondent Richard V. Iverson. The trial court also found Iverson was entitled to attorney fees and costs incurred in defending the declaratory judgment action. We affirm.

## FACTS

On May 24, 1985, Iverson and several friends met at Iverson's home after work. Respondent Orville M. Olson, whom Iverson had never met, came to Iverson's home with a mutual friend.

Olson had spent the day fishing and drinking beer with his brother-in-law. Olson continued to drink beer at Iverson's home. He became loud and argumentative. Olson began threatening Iverson and his guests. At one point, Olson tried to free Iverson's pet cougar and bobcat from their cages. Olson said he wanted to fight the cats. Iverson told Olson to leave the cats alone.

Iverson told Olson to leave. When Olson did not respond, Iverson pushed Olson and hit him several times. Olson then left the house. According to Iverson and his guests, Olson continued to threaten Iverson as Olson walked to his car. Just prior to getting into his car, Olson said he would come back and kill Iverson.

Olson returned alone to Iverson's home about two hours later. Iverson was on the phone with his father when he saw Olson pull into his driveway. Iverson told his father about the earlier incident. He also told his father he thought Olson had a weapon. Upon his father's advice, Iverson retrieved a loaded .22 caliber rifle from his bedroom.

There is no dispute that Iverson shot Olson. However, Iverson stated that Olson broke through the kitchen screen door, knocked open the interior door, entered the kitchen and threatened to kill Iverson. Iverson stated Olson grabbed at the gun and it fired and Olson fell backward.

Olson explained he walked to the kitchen door and knocked. He states Iverson opened the door and shot him. Olson said he saw the blaze from the gun and fell to the ground. He then returned to his car and drove home. Iverson's father heard the entire incident on the phone. His testimony supports Iverson's version of the shooting.

After Olson left, Iverson called the police. Meanwhile, Olson arrived home. A

neighbor saw Olson and called an ambulance. Olson was taken to the hospital and treated for an abdominal gunshot wound. He underwent emergency surgery to remove a bullet lodged near his lower spine.

Both Olson and Iverson presented the facts on four different occasions. Iverson's story remained consistent. His story is supported by other witnesses. Olson's recall of the facts diminished with time. At trial, it was apparent that Olson remembered little of the shooting.

As a result of the shooting, Olson and his wife, respondent Theresa A. Olson, filed a complaint against Iverson. The complaint alleged negligence and requested damages in excess of $250,000. Iverson answered, pleading self-defense. Iverson tendered his defense to his homeowner's insurer, Economy, which agreed to defend Iverson pursuant to a reservation of rights agreement.

Economy subsequently brought a declaratory judgment action to determine coverage under the insurance policy. It stated it had no duty to defend and/or indemnify Iverson. Economy asserted the shooting was intentional. Intentional acts are expressly excluded from coverage. Economy states this is true even if the act was committed in self-defense.

Iverson retained independent counsel to represent him in the declaratory judgment action. A jury trial began on June 1, 1987. On June 4, 1987, the jury returned a special verdict finding that Iverson intentionally shot Olson but did so "in lawful defense of the person or property." The trial court ordered Economy to defend and/or indemnify Iverson in the tort action.

During the trial, Iverson and Olson negotiated a possible settlement. All attorneys were aware of the meetings. Olson and Iverson entered into a *Miller–Shugart* stipulated settlement.[1] Economy took no part

in the negotiations or in the settlement. The settlement was finalized after the jury retired but prior to special verdict.

The agreement said that if the tort action was pursued, Iverson would be found negligent. It also estimated the Olsons' damages in excess of $250,000. This exceeded the homeowner's policy's coverage limits. The agreement relieved Iverson of personal liability and stipulated that damages were recoverable solely from the insurance proceeds.

After trial, Economy moved for judgment notwithstanding the verdict. Iverson requested attorney fees and costs accrued in the declaratory judgment action.

The trial court denied Economy's motion for judgment notwithstanding the verdict. It also found Iverson entitled to attorney fees. Final judgment on the declaratory judgment action was entered on September 23, 1987. Judgment on the *Miller–Shugart* agreement was entered on November 16, 1987.

Economy appeals from judgment entered pursuant to the declaratory judgment action. Concurrent with filing the appeal, Economy moved to supplement the trial record.

### ISSUES

1. Under the terms of its homeowner's policy, does Economy have a duty to defend and/or indemnify Iverson upon a special verdict finding that Iverson intentionally shot Olson but did so in self-defense?

2. Was the evidence submitted at trial sufficient to support a finding of self-defense?

3. If the *Miller–Shugart* agreement is valid, did the trial court err in granting Iverson attorney fees?

1. A *Miller–Shugart* settlement is an agreement in which a plaintiff settles with the tortfeasor but agrees that the judgment will be collected from the proceeds of any applicable insurance policies. In *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982), the Minnesota Supreme Court upheld such an agreement, stating that it is not a breach of an insured's "duty to cooperate" to

enter into this type of agreement. *Miller* also concerned a declaratory judgment action in which an insurer was seeking to deny coverage. The court stated that, although the insureds had a duty to cooperate, the insureds also had the right to protect themselves given their situation of possible high personal liability.

4. Should Economy's motion to supplement the record be granted?

## ANALYSIS

### 1. *Does Economy have a duty to defend and/or indemnify Iverson?*

#### A. *Is there coverage under the terms of the homeowner's insurance policy?*

■ Economy brought the declaratory judgment action on the grounds that under the terms of the homeowner's policy it issued to Iverson it had no duty to defend or indemnify Iverson. The policy issued to Iverson provides as follows:

COVERAGE E—Personal Liability

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage *caused by an occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the allegations are groundless, false or fraudulent.

(Emphasis added.) "Occurrence" is defined under the policy as

an accident, including exposure to conditions, which results, during the policy period, in:

a. bodily injury; or

b. property damage.

(Emphasis added.) The policy further specifically excludes bodily injury or property damage which is expected or intended by the insured. The policy states:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured.

Economy argues that since the jury determined that Iverson committed an intentional act, it has no duty to defend or indemnify Iverson. However, the jury also determined that the shooting was in "the course of the lawful defense of his person or property." In *Western Fire Insurance Co. v. Persons*, 393 N.W.2d 234 (Minn.Ct. App.1986), we held that if an insured can prove self-defense, the insurance company cannot deny coverage under the intentional acts exclusion.

This court and the Minnesota Supreme Court look behind the words of the contract in finding coverage for self-defense. *Id.* at 237; *Smith v. Senst*, 313 N.W.2d 202 (Minn.1981); *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373 (Minn. 1977). The Minnesota Supreme Court stated in *Sipple* that

the purpose of an "intentional acts" exclusion is to prevent extending to the insured the license to commit wanton and malicious acts.

*Id.* at 375. We reiterated this view in *Persons* when saying:

One who has acted in self-defense has not used insurance coverage as a license to commit wanton and malicious acts. In fact, someone properly acting in self-defense is, by definition, not acting unreasonably. That person is not committing conduct that the intentional act exclusionary provision is intended to discourage. Consequently, if an insured can plead and prove self-defense, this will bar exclusion from coverage under an intentional acts provision of the applicable insurance policy.

*Id.*, 393 N.W.2d at 237 (citation omitted).

The jury found that Iverson shot Olson in self-defense. The supreme court indicated that if a jury properly finds that the insured acted reflexively *or* in self-defense, the intentional act exclusionary clause is inapplicable. *Smith*, 313 N.W.2d at 203–04; *Sipple*, 255 N.W.2d at 377. Therefore, we agree with the trial court that Economy cannot deny Iverson coverage under the intentional act exclusion.

#### B. *What extent of coverage is provided?*

We find coverage under the homeowner's insurance policy. Economy argues its duty is limited to one to defend. Indemnity is alleged inappropriate because the

self-defense verdict presumably relieves Iverson of liability. Olson attacks the reviewability of indemnification. Further, he asserts that if we consider indemnification reviewable, we must order Economy to indemnify Iverson under the terms of the *Miller–Shugart* agreement.

According to Minn.R.Civ.App.P. 103.04:

The appellate courts may reverse, affirm or modify the judgment * * * appealed from or take any other action as the interest of justice may require.

Recently, in *Sauter v. Wasemiller,* 389 N.W.2d 200 (Minn.1986), the Minnesota Supreme Court laid out the general rule:

[I]n order to preserve for appellate review issues arising during the course of trial, counsel—in addition to taking the other requisite steps, including making a timely objection—must move the trial court for a new trial pursuant to Minn.R. Civ.App.P. 59.01.

*Id.* at 202. The supreme court in *Gruenhagen v. Larson,* 310 Minn. 454, 246 N.W. 2d 565 (1976), stated:

[O]n appeal from judgment where there has been no motion for a new trial the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment.

*Id.* at 458, 246 N.W.2d at 569. Therefore, in order for the indemnification issue to be reviewed on appeal, three things must be present:

(a) There must be a judgment.

(b) Pursuant to that judgment, counsel must move for a new trial.

(c) If there was no motion for a new trial, this court should only review the sufficiency of the evidence supporting the judgment.

(a) *Is there a judgment?*

Obviously, there is a judgment. However, indemnification was not a subject of that judgment. The declaratory judgment action was brought by Economy to determine its "obligation to *defend or indemnify* Iverson." (Emphasis added.) The judgment on appeal states:

That [Economy's] motion to amend the Order for Judgment to enter judgment that [Economy] is not obligated to defend or indemnify Richard V. Iverson in the action commenced by Orville M. Olson and Theresa A. Olson is denied.

This judgment issued after a hearing about the original order for judgment on special verdict. The order for judgment on special verdict states:

IT IS ORDERED that [Economy] provide to Richard V. Iverson *a defense* in the civil action of Orville M. Olson and Theresa A. Olson v. Richard V. Iverson pursuant to the terms of a homeowner's insurance policy in effect on May 24, 1985.

(Emphasis added.) The trial court's order discusses only Economy's duty to *defend.*

A judgment is a clerical procedure. The judgment and wording of the judgment are taken directly from the trial court's order. The order and memorandum express the trial court's decision and supporting findings of fact and conclusions of law. The only hint of indemnification is found in the trial court's discussion of attorney fees. The trial court wrote:

[T]his court has deep reservations concerning the propriety of an agreement which could require [Economy] to pay $250,000.00 * * *.

It is not clear whether the trial court intended to hold Economy responsible for paying $250,000 to Olson. The cumulative orders, memorandum and judgment indicate that the trial court did not intend to bind Economy to any particular indemnification duty. The intent was to obligate Economy to defend until liability was ascertained. Only then would indemnification be relevant. The judgment is not final on the indemnification issue.

The fact that no judgment was issued on indemnification eliminates the need for further discussion. However, a complete analysis under the three-part test supports our decision to dismiss the indemnification issue.

(b) *Was there a motion for a new trial?*

Neither counsel moved for a new trial. Economy's lawyer did move to amend the

order for judgment and to enter judgment notwithstanding the verdict. The standard set out in *Sauter* applies here. We restrict the threshhold to a motion for a new trial. Therefore, if there had been a judgment, we could properly review only the sufficiency of the evidence.

(c) *Was the evidence sufficient?*

The evidence must support Economy's obligation to indemnify Iverson. *Sauter*, 389 N.W.2d at 201. The issue of indemnification was prompted by the *Miller–Shugart* agreement. This consent settlement was signed after the jury retired but before the verdict was returned. The evidence gathered at trial was geared toward determining whether or not the shooting was intentional and/or in self-defense. The evidence did not accrue to determine liability. The jury was not charged with instructions on liability.

■ The duty to defend is broader than the duty to pay. *U.S. Fidelity Guaranty Co. v. Louis A. Roser Co., Inc.*, 585 F.2d 932, 936 (8th Cir.1978); *Ritter v. U.S. Fidelity*, 573 F.2d 539, 542 (8th Cir.1978). The obligation to defend is also not synonymous with nor determinative of coverage. *Continental Casualty Co. v. Signal Insurance Co.*, 119 Ariz. 234, 580 P.2d 372 (App.1978).

■ In a liability policy, the duty to indemnify turns on the insured's liability. It is that liability that designates the insurer's liability and signals indemnification.

■ In this case, the insured was found to have acted in self-defense. Self-defense is normally a complete defense to liability. However, it is possible that a trial on the tort action might find Iverson liable for Olson's injuries.[2] When and if Iverson's liability is determined, a consideration of indemnification is then warranted. Because liability was not determined at trial, there is no evidence supporting an obligation to *now* indemnify under the terms of the policy. The evidence supports only a duty to defend.

■ The settlement was not binding on Economy when the verdict was returned. Nor was it binding when judgment on the declaratory judgment action was entered. Even when the judgment on the settlement was issued, Economy was not conclusively bound.

[W]hile the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the *liability and damage aspects of plaintiff's claim*, as well as the risks of going to trial.

*Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982) (emphasis added).[3] The determination of the settlement's reasonableness and finality requires a separate trial.

Plaintiff's stipulated judgment was not conclusive on the insurer until the insurer had an opportunity to litigate the issues of whether or not it was bound by the judgment.

*Id.* at 736.[4]

The issue of indemnification was not decided by the trial court. The evidence

---

2. Iverson acted in self-defense. Collateral estoppel prevents any party to the declaratory judgment from challenging the issue of self-defense in a subsequent tort action. A civil trial will most likely hear the issue of negligent use of too much force. The final determination of liability will hinge upon the comparative fault of Iverson and Olson.

3. The *Miller–Shugart* agreement states Iverson will be found negligent. However, the extent of his liability is determined after consideration of comparative fault.

4. The "no action" clause in Economy's policy read:

No action shall be brought against us unless there has been compliance with the policy provisions. No one shall have any right to join us as a party to any action against any insured. Further, no action with respect to Coverage E (liability) shall be brought against us until the obligation of the insured has been

shows no support for a determination of liability and therefore no basis for indemnification.

### 2. *Sufficiency of the Evidence.*

■ Economy states that there was insufficient evidence presented to support a special verdict of self-defense.

> "In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty [or not guilty] of the offense charged."

*State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980) (quoting *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978)). The main contention is that Iverson stated at trial he did not shoot Olson in self-defense. However, the jury was asked to look at the evidence as a whole and answer the question:

> Did Richard Iverson injure Orville Olson in the course of the lawful defense of his person or property?

The jury answered yes, under its duty to resolve testimonial conflict. *State v. Lakin,* 378 N.W.2d 101, 103 (Minn.Ct.App. 1985). In this case, after weighing all the evidence, the jury determined that Iverson acted in "lawful defense of his person or property."

The jury's determination should not be overturned unless there is no reasonable manner in which to find self-defense. We affirm the self-defense finding.

### 3. *Attorney Fees.*

After the trial court held that Economy had a duty to defend and indemnify Iverson, Iverson moved to recover attorney fees and costs expended in defending the declaratory judgment action. Iverson asserts that he is entitled to reimbursement because he prevailed in the declaratory judgment action. Economy argues that the *Miller–Shugart* agreement releases Economy from any obligation to Iverson.

■ The general rule in Minnesota is that attorney fees and costs are allowable only if authorized by statute or contract. *Rent–a–Scooter, Inc. v. Universal Underwriters Insurance Co.,* 285 Minn. 264, 268–69, 173 N.W.2d 9, 12 (1969). However, there is a limited exception. The Minnesota Supreme Court determined that:

> [W]here an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden.

*Lanoue v. Fireman's Fund American Insurance Companies,* 278 N.W.2d 49, 55 (Minn.1979). Under this standard, Economy is obligated to reimburse Iverson for fees associated with defending the declaratory judgment action.

■ Further, the insurance policy itself states:

### SECTION II ADDITIONAL COVERAGES

We [the insured] cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

a. expenses incurred by us and costs taxed against any insured in any suit we defend;

\* \* \* \* \* \*

c. reasonable expenses incurred by any insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit.

This policy section indicates that Economy acknowledges recovery for attorney fees in instances where Economy pursues and loses a declaratory judgment action. The Minnesota Supreme Court held that similar language authorized payment of attorney fees to an insured for the successful defense of a declaratory judgment action.[5]

---

determined by final judgment or agreement signed by us.

**5.** The insurance policy in *Atlantic Mutual Insurance Co. v. Judd Co.,* 380 N.W.2d 122, 126 (Minn.1986), said the insurer will pay "reason-

*Atlantic Mutual Insurance Co. v. Judd Co.*, 380 N.W.2d 122, 126 (Minn.1986). The *Miller–Shugart* agreement does not expressly relinquish any contract right, other than payment directly to Olson. The aforementioned policy section provides Iverson coverage for attorney fees.

Economy acted within its rights when it commenced the declaratory judgment action. Iverson had no choice but to hire a private attorney since the action was adverse to Iverson's interest. However, once Economy was found obligated to defend Iverson, all liability covered by the policy was activated, including attorney fees.

Economy contends that Iverson is no longer a real party in interest under the terms of the *Miller–Shugart* agreement. Economy analogizes Iverson's situation to the situations in *State ex rel. Southwell v. Chamberland*, 361 N.W.2d 814 (Minn. 1985), and *Blair v. Espeland*, 231 Minn. 444, 43 N.W.2d 274 (1950). *Chamberland* dealt with an assignment. This case is not an assignment. Iverson did not assign any rights but admitted liability in order to avoid a deficiency judgment. The purpose of the settlement was to relieve Iverson from future financial liability. *Blair* revolves around a loan receipt. This case does not resemble a loan receipt transaction.

Notwithstanding the *Miller–Shugart* agreement, Iverson is still a party to the insurance contract. Economy cannot avoid its legal obligation to pay Iverson's costs and attorney fees for defending the declaratory action. The trial court's order is valid.[6]

*4. Motion to Supplement v. Motion to Strike.*

 When Economy submitted its appellant's brief, it included a Broad Form Comprehensive General Liability Endorsement. This endorsement was not part of

the trial record. Iverson moved to strike the addition. Minn.R.Civ.App.P. 110.01 (1987) states that:

> The papers filed in the trial court, the exhibits, and transcript of the proceedings, if any, shall constitute the record on appeal in all cases.

New evidence is admissible at the appellate level in very limited situations.

> The appellate courts have recognized extremely limited criteria for the "appellate" admission of evidence, generally only when that evidence is conclusive or uncontroverted. * * * While evidence of economic and social surveys, statistical compilations, etc., may provide an appropriate context for the appellate court's ultimate decision (in the manner of a Brandeis Brief, Black's Law Dictionary (5th Ed.) at p. 170), such evidence should rarely, if ever, be submitted as a basis for urging a reversal of factual decisions made by the trial court. Cf., *Mattfeld v. Nester*, 226 Minn. 106, 123, 32 N.W.2d 291, 303 (1948) (certified copies of letters of special administration admissible after trial because of conclusive nature of proof). If the evidence was available at the time of trial, it should have been submitted to the trial court. On the other hand, if the decision of the appellate court will have a particularly widespread social, economic or legal impact, facts that may assist the appellate courts in assessing that impact may properly be called to the court's attention, if the standards for appellate admissibility are met.

3 E. Magnuson, D. Herr and R. Haydock, *Minnesota Practice* § 110.4 at 287 (1985). After considering the requested addition in light of the prior test, we deny Economy's motion to supplement.

## DECISION

Economy cannot avoid coverage under the terms of its homeowner's insurance

---

able expenses incurred by the insured at the company's request in assisting the company in the investigation of any claim or suit."

**6.** The amount or calculation of attorney fees is not an issue on appeal. Economy also does not challenge the validity of the *Miller–Shugart* agreement on appeal but recognizes it may chal-

lenge the settlement's reasonableness if a separate action is brought by Olson to enforce the settlement. "This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Miller,* 316 N.W.2d at 735.

policy. Intentional acts committed in self-defense fall within the intended purpose of the policy. Coverage is limited to a duty to defend until the insured's liability is conclusively determined.

Until liability is determined under the *Miller–Shugart* agreement on both liability and damages with application of comparative fault, indemnification is not established. *Miller,* 316 N.W.2d at 735–36. Iverson is entitled to attorney fees and costs incurred in defending the declaratory judgment action.

Affirmed.