**NATIONAL UNION FIRE INSURANCE COMPANY, Respondent,**

v.

**Gregory EVENSON, Appellant,**

**Northern Capital Agency, Inc., Respondent,**

**Hatzung Insurance Agency, et al., Appellants,**

**Phoenix Risk Service, Ltd., et al., Respondents,**

**Transamerica Insurance Company, Defendant,**

**Security Protection Services, Ltd., and Norwest Bank Minneapolis, N.A., defendant-intervenor, Appellants.**

**Nos. C2–88–1927, C7–88–2376.**

Court of Appeals of Minnesota.

May 9, 1989.

Review Denied July 12, 1989.

Timothy W. Waldeck, Foster, Waldeck & Lind, Ltd., Minneapolis, for National Union Fire Ins. Co., respondent.

William J. Hanley, Harrigan, Hanley & Poirier, Minneapolis, for Gregory Evenson, appellant.

Thomas E. Sanner, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Northern Capital Agency, Inc., respondent.

Marianne Settano, Peterson & Treat, P.A., Minneapolis, for Hatzung Insurance Agency, et al., appellants.

Frederick R. Jacobberger, Gilsdorf & Jacobberger, St. Paul, for Phoenix Risk Service, Ltd., et al., respondents.

John P. Clifford, Mark D. Streed, Meshbesher, Singer & Spence Ltd., Minneapolis, for Sec. Protection Services, Ltd., appellant.

Thomas L. Kimer, Calvin L. Litsey, Faegre & Benson, Minneapolis, for Norwest Bank Minneapolis, N.A., defendant-intervenor, appellant.

Heard, considered and decided by LANSING, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a declaratory judgment action brought by respondent National Union Fire Insurance Company to deter-

mine its duty to defend and/or indemnify appellant Gregory Evenson under an errors and omissions policy. We affirm in part, reverse in part and remand.

## FACTS

Appellant Security Protection Services, Ltd. was incorporated in 1984 and was created to service automatic teller machines operated by financial institutions. Stephen Svendsen was the president of Security Protection.

Evenson was an insurance agent and an employee of respondent Northern Capital Agency, Inc. Northern Capital and Evenson were insured under an errors and omissions policy by National Union. The policy contains the following exclusion clause:

(a) To any claim arising out of any dishonest, criminal, fraudulent or malicious act, error or omission of any insured.

In March 1984, Svendsen met with Evenson to discuss Security Protection's insurance needs. Svendsen told Evenson that Security Protection would need workers' compensation, general liability, umbrella liability coverage, and a fidelity bond. Svendsen was negotiating for servicing and cash replenishment contracts with Twin City Federal and appellant Norwest Bank Minneapolis, N.A. Svendsen eventually signed a contract with Norwest to begin making automatic teller machine repairs on August 1, 1984, and to begin cash replenishment services on October 1, 1984.

By April 1984, Evenson arranged for insurance coverage for Security Protection for workers' compensation, general liability and umbrella liability. However, Evenson had not obtained a fidelity bond.

Evenson had little experience in the placement of fidelity bonds. On April 20, 1984, Evenson applied for a bond with Fireman's Fund because his employer, Northern Capital, had an agency agreement with Fireman's Fund. However, no bond was ever secured.

Around April 24, Evenson contacted Fairfield Agencies, a group that wrote construction bonds. Evenson learned that Fairfield could not help him. He next contacted ENS Insurance. Evenson learned that ENS was not in the bond business.

In May 1984, an insurance summary for Security Protection was prepared and delivered to Security Protection. This summary listed a Fireman's Fund 3–D bond as in place. Security Protection forwarded the summary to Norwest. In June 1984, Norwest contacted Evenson regarding the bond, requesting that the bond be payable to Norwest and Security Protection for any loss incurred.

From June to September, Evenson contacted four additional insurance companies in an unsuccessful effort to procure a bond. In September 1984, Evenson contacted John Carder of Phoenix Risk Service. He met with Carder on October 4 and with Carder and Svendsen on October 23. After that meeting, Carder made applications to companies, including Transamerica, to try to place a bond for Security Protection. On or about November 15, Transamerica contacted Carder and told him it would not consider the bond.

Meanwhile, on November 6, 1984 Security Protection suffered a cash loss of $11,500 in connection with its cash replenishment services for Norwest's automatic teller machines. At that point, Evenson panicked. On November 9 he created a false certificate of insurance which purported to provide coverage through Transamerica and delivered the certificate to Norwest. On November 30, Security Protection suffered a second cash loss of $82,000 while servicing Norwest's machines. Later it was determined that a former Security Protection employee who had been fired by Security Protection on November 6 was responsible for the losses.

Evenson testified that by creating the false certificate he was simply trying to buy time, keep Security Protection in business, and ensure his own continued business relationship with Security Protection. He testified that he never intended to injure or defraud anyone or to personally benefit himself.

On December 5, Evenson met with Steve Leupke, the owner of Northern Capital,

and told him what had transpired. Northern Capital eventually contacted its own errors and omissions insurer, National Union. At no time did Evenson ever consult an insurance handbook regarding placement of a bond. Furthermore, Evenson did not contact any of the other agencies in the city who specialized in such bonds (Evenson was afraid that they would steal his business), nor did he contact Lloyds of London. Evenson did not contact any armored car service or other security agency which may have had bond coverage.

On January 4, 1985, Security Protection sued Evenson and others for its losses. On April 30, 1985, National Union initiated a declaratory judgment action to determine whether it had a duty to defend and indemnify Evenson. The trial court concluded that Evenson's conduct prior to November 9, 1984 constituted negligence. The trial court further concluded that Evenson's conduct on November 9 and thereafter was dishonest and fraudulent for the purpose of deceiving Security Protection. National Union was held responsible to provide coverage and indemnity for the losses sustained prior to November 9. Evenson's motion for attorney fees and expenses was denied.

### ISSUES

1. Did the trial court err in deciding issues and considering evidence outside the scope of the declaratory judgment action?

2. Did the trial court err in interpreting the policy to exclude claims based on Evenson's misrepresentations?

3. Did the trial court make findings of fact and conclusions of law regarding all issues before it?

4. Did the trial court err in making findings of fact not justified by the evidence?

5. Did the trial court err in denying Evenson's motion for attorney fees and expenses?

### ANALYSIS

■ 1. Appellants argue that the trial court considered evidence outside the scope of National Union's complaint in the declar-

atory judgment action. Norwest submitted a motion in limine to limit evidence to items regarding Evenson's acts in fabricating the certificate of insurance. However, the trial court ruled that evidence relating to Evenson's *oral* misrepresentations could also be considered. National Union's complaint alleges that National Union has no duty to defend or indemnify Evenson because his intentional act of falsifying the certificate of insurance violated the exclusion for dishonest, criminal or fraudulent acts contained in its policy.

Paragraph 18 of National Union's complaint contains a general allegation that

the acts giving rise for which Security Protection Services, Ltd., a Minnesota corporation has brought suit are not acts which National Union Fire Insurance Company of Pittsburgh, Pennsylvania provides coverage and further are acts which are specifically excluded under the policy.

The trial court did not err in considering this evidence.

■ 2. Appellants contend that the trial court improperly interpreted the errors and omissions policy to exclude claims based on Evenson's acts in fabricating the certificate of insurance and in misrepresenting that coverage was in place when it was not.

Appellants correctly argue the language in the National Union policy must be strictly construed against National Union. Insurers have the burden of proving a policy exclusion applies. *Caledonia Community Hospital v. St. Paul Fire & Marine Insurance Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). Such exclusions are to be strictly interpreted against the insurer. *Reinsurance Association of Minnesota v. Patch*, 383 N.W.2d 708, 711 (Minn.Ct.App. 1986). Ambiguity in the language of the policy must be resolved in favor of the insured. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 36 (Minn.1979).

Appellants cite *Continental Casualty Co. v. Reed*, 306 F.Supp. 1072 (D.Minn. 1969), for the proposition that such an ex-

clusionary clause applies to fraudulent acts only when coupled with a showing that the act was done with intent to cause specific injury to another or to secure personal profit. In *Continental Casualty,* an agent wrote a performance bond prior to or without receiving the appropriate discretionary authority. The *Continental* court felt that although the agent was guilty of "wishful thinking" in believing his insurer would approve his client as a risk, and although his actions violated his employer's instructions and breached his contract, they did not equal fraud or criminality. Hence, the insurer's errors and omissions coverer was obligated to defend and indemnify the insurance agent.

However, the *Continental* decision and appellants' arguments ignore Minnesota's definition of fraud. Under Minnesota law, the elements of actual fraud are:

(1) a representation;

(2) the representation must be false;

(3) the representation must deal with past or present fact;

(4) the fact must be material;

(5) the fact must be susceptible of knowledge;

(6) the representer must know the fact is false or assert it as of his own knowledge;

(7) the representer must intend to have the other person induced to act or justified in acting upon it;

(8) the other person must be induced to act or justified in acting;

(9) that person's actions must be in reliance upon the representation;

(10) that person must suffer damages;

(11) the misrepresentation must be the proximate cause of injury.

*Western Contracting Corp. v. Dow Chemical Co.,* 664 F.2d 1097, 1100–1101 (8th Cir.1981) (citing *Hanson v. Ford Motor Co.,* 278 F.2d 586, 591 (8th Cir.1960)). Evenson's conduct of falsifying the certificate of insurance constitutes fraud and excludes National Union's responsibilities to indemnify and defend Evenson.

3. Appellants next argue that the trial court erred by going beyond the scope of the declaratory judgment action.

Specifically, appellants argue that the issue of whether National Union must defend Evenson for his negligent acts and his breach of contract with Security Protection should not have been resolved in the declaratory judgment action.

Where the question to be resolved in the declaratory judgment action between an insurer and an insured will be decided in the main action, it is inappropriate to grant a declaratory judgment.

*Grain Dealers Mutual Insurance Co. v. Cady,* 318 N.W.2d 247, 250 (Minn.1982) (citing *Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 406, 347 A.2d 842, 849 (1975)).

In the declaratory judgment action, the trial court was asked to decide whether National Union's policy exclusion for fraudulent acts applied. Security Protection suffered losses of $11,500 on November 6 and $82,000 on November 30. The trial court found that the loss on November 6 was caused by Evenson's negligence in obtaining the bond, but that Evenson's fraudulent act of preparing the false certificate of insurance on November 9 resulted in the November 30 loss. Although it could be argued that after Evenson falsified the certificate of insurance, he still breached his contract with Security Protection by not providing a bond and he engaged in other negligent conduct; however, it was Evenson's *fraud* which was the proximate cause of the loss. The trial court's ruling in the declaratory judgment action was correct.

Appellants also argue that the trial court failed to make findings on Security Protection's breach of contract claim and on National Union's service of a timely reservation of rights. The trial court is under an obligation to make specific findings of fact under Minn.R.Civ.P. 52.01. Findings are necessary to permit meaningful appellate review; failure to make adequate findings will result in remand. *See Woodrich Construction Co. v. State,* 287 Minn. 260, 263, 177 N.W.2d 563, 565 (1970). Appellants' arguments regarding the breach of contract claim are misplaced. This issue was alleged in the underlying action and is properly resolved there. The declaratory

judgment action resolved only the issue of whether Evenson's fraudulent actions relieved National Union of the duty to defend or indemnify.

The trial court did not make any finding as to whether National Union was estopped from denying coverage because of its failure to serve Evenson with a timely reservation of rights. *See Faber v. Roelofs*, 311 Minn. 428, 433–34, 250 N.W.2d 817, 821 (1977). This issue must be remanded for further consideration.

■ 4. Appellants argue that the trial court erred in its conclusions of law regarding proximate cause. Appellants argue that Evenson's negligent actions would also be a proximate cause of Security Protection's losses. As such, these losses would be covered under the National Union policy. Appellants cite a line of cases in which there were several causes of a loss, some causes included and some excluded under insurance policies. In these cases, coverage was allowed even though the excluded cause may also have contributed to the loss. *See Henning Nelson Construction Co. v. Fireman's Fund American Life Insurance Co.*, 383 N.W.2d 645 (Minn. 1986) (several factors contributed to collapse of a foundation wall, and even though some factors were excluded under the policy, the insurer could not deny coverage because different causes contributed to the loss); *Waseca Mutual Insurance Co. v. Noska*, 331 N.W.2d 917 (Minn.1983) (man drove down a road with uncovered barrels of cinders in the back of his truck and fires were ignited. The negligent acts of driving and loading the uncovered barrels contributed to the loss, and although driving was excluded under the policy, negligence in loading the barrels was included; thus coverage was allowed); *Fawcett House, Inc. v. Great Central Insurance Co.*, 280 Minn. 325, 159 N.W.2d 268 (1968) (vandals broke into a building, disabling the heating and plumbing systems; and although loss from freezing was not covered, loss from vandalism was; and recovery was allowed).

Appellants, however, ignore the finding of the trial court. The trial court specifically considered Evenson's negligence and determined that National Union was required to indemnify and defend for losses occurring up to but not including the time Evenson falsified the certificate of insurance. After that date, Evenson's falsification of the insurance document resulting in loss is excluded under the policy. Appellants argue:

> Evenson's *negligent* actions in fabricating the certificate of insurance and making oral representations about the existence of coverage and Evenson's negligent actions in not diligently attempting to procure a bond could each independently be a cause of the entire loss, and both in fact were.

Although Evenson could have engaged in both negligent conduct (in failing to provide the bond as instructed) and fraudulent conduct (in falsifying the certificate of insurance), the fraud clearly is the overriding cause of Security Protection's loss on November 30 of $82,000. By sending a false certificate of insurance, Evenson stopped any immediate inquiries into the effectiveness or veracity of the bond. In fact, Evenson admitted that he falsified the certificate to "buy time." If Evenson had not "bought" this time and had admitted his actions, the second loss could have been prevented. Since it was Evenson's fraudulent activities that caused the second loss, the trial court's findings are consistent. Those activities were determined on the merits with all parties present and participating at trial.

We believe that the trial court's findings are correct. However, they necessarily must apply only to the narrow issue of National Union's duty to defend under the policy as to negligence and fraud. The trial court's findings of fact and conclusions of law must therefore be read in this limited manner. All other issues are reserved for determination in the underlying action.

5. Finally, appellants argue that the trial court erred in denying Evenson's motion for attorney fees in defending against the *declaratory judgment action*. Appellants cite *Economy Fire & Casualty Co. v. Iverson*, 426 N.W.2d 195 (Minn.Ct.App.1988),

*pet. for rev. granted* (Minn. July 28, 1988). In *Iverson*, an insured tendered the defense of an intentional tort claim to his homeowner's insurer, and the insurance company brought a declaratory judgment action to determine the extent of coverage. This court found that the insurer had a duty to defend and indemnify, and then awarded attorney fees to the insured for the cost of litigating the declaratory judgment action.

In the present case, National Union has the duty to defend and indemnify Evenson for claims and losses occurring prior to November 9, 1984, but it has no such duty after that date. Under *Iverson*, the trial court should have awarded attorney fees for at least a portion of Evenson's costs of defense in the declaratory judgment action.

### DECISION

We reverse the denial of Evenson's motion for attorney fees, and we remand for consideration of the issue of a timely service of reservation of rights by National Union. We affirm the trial court's decision in all other respects. Issues not determined in this action are reserved for final decision in the underlying action.

Affirmed in part, reversed in part and remanded.