**TOWER INSURANCE COMPANY, INC., Plaintiff,**

v.

**John Paul JUDGE, Maurice A. Meyer, as Trustee for the Heirs of Christopher Maurice Meyer, deceased; Richard Brent Balster, Chad Allen Mann, Jacen John Axelrod, Defendants.**

**Maurice A. MEYER, Counter–Claimant,**

v.

**TOWER INSURANCE COMPANY, INC., Counter–Defendant.**

**SECURA INSURANCE COMPANY, a mutual company f/k/a Home Mutual Insurance Company, Plaintiff,**

v.

**Richard Brent BALSTER, John Paul Judge, Chad Alen Mann, Jacen John Axelrod, Maurice A. Meyer, Trustee for the heirs of Christopher Maurice Meyer, deceased, Defendants.**

**Maurice A. MEYER, Counter-Claimant,**

v.

**SECURA INSURANCE COMPANY f/k/a Home Mutual Insurance Company, Counter-Defendant.**

Civ. Nos. 4–93–273, 4–93–722.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 17, 1993.

Dale M. Wagner, Louis J. Speltz, and Peter A. Koller, Moss & Barnett, Minneapolis, MN, for plaintiff Tower Ins. Co., Inc.

Susan D. Thurmer, Spence, Ricke & Thurmer, St. Paul, MN, for plaintiff Secura Ins. Co.

Dylan J. McFarland and Fred Burstein, Fred Burstein & Associates, Minneapolis, MN, for defendant John Paul Judge.

Mark H. Gruesner, Schwebel, Goetz & Sieben, Minneapolis, MN, for defendant Maurice A. Meyer.

Earl P. Gray, Gray & Malacko, St. Paul, MN, for defendant Richard Brent Balster.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on various cross-motions for summary judgment.

### FACTS

The undisputed facts in this case are tragic and sad. On August 28, 1992, a group of young people from Hastings, Minnesota, traveled to a trailer home in Wisconsin that was owned by a member of the group's father. The group brought a large amount of alcohol with them. Among those that went to Wisconsin were Christopher M. Meyer, Richard B. Balster, John P. Judge, Jacen J. Axelrod, and Chad A. Mann. These five young men were all nineteen years of age, had graduated together from Hastings High School the year before, and had been friends for many years.

The group arrived at the trailer home on Friday, August 28, 1992, consumed alcohol, and then went to bed. The next day the group began drinking early and drank throughout the day and into the night. Sometime during the evening, Meyer passed out on the front lawn. Around midnight, Meyer woke up and made his way inside and into a bedroom. Balster later went into the bedroom and attempted to wake Meyer by talking to him and shaking him, but Meyer did not awaken. Judge then went to check on Meyer. When Judge turned on the light in the bedroom he received a shock, after which he noticed that the light switch was hanging from the wall and the cover plate was not attached.

Judge, Mann, Axelrod, and Balster then collectively decided to try to "shock" Meyer awake. Mann retrieved some speaker wire and a wire stripper from his automobile. After stripping the ends of the speaker wire, the group tested it electrically and did not receive any shock. They concluded that the wire was not heavy enough to carry the current. The group then retrieved some heavier speaker wire from the kitchen and stripped the ends of it. The speaker wire actually consisted of two wires which ran side by side and which were individually insulated. After testing the wire on themselves and experiencing shocks, the group attached one wire to Meyer's ankle and the other to his wrist. However, before the group attached the opposite ends of the wires to the light switch terminal, they discussed whether a shock might harm Meyer. Judge's father is a master electrician and Judge had worked for his father in the past. The group asked Judge about the potential danger. Judge responded that there was no danger because the circuit carried only 110 volts and because the shocks would be brief in duration.

The group then attached the opposite ends of the wires to the light switch terminal.

The group proceeded to turn the light switch on and off several times. After receiving little reaction from Meyer, the group returned to the kitchen with the light switch off. Over a period of approximately twenty minutes, Balster, Judge, and Mann would occasionally return to the room and flick the switch one or more times. After twenty minutes Balster checked on Meyer and noticed that he looked pale, his lips had turned blue, and he had stopped breathing. Balster immediately yelled to the rest of the group. The group unhooked the wires and carried Meyer into the kitchen. Balster and Judge attempted to revive Meyer with cardiopulmonary resuscitation (CPR). The group then loaded Meyer into the back of a pickup truck and drove to a hospital, continuing to perform CPR on the way. Meyer was pronounced dead at 1:30 a.m. on August 30, 1992.

The autopsy report determined the cause of death to be electrocution.[1] After learning that Meyer had been hooked up to the light switch terminal, the police had an electrician inspect the premises. The electrician determined that the light switch had been wired in such a way that when it was in the on position, no electric current flowed into Meyer. Instead, current was constantly flowing into Meyer the entire time that the light switch was in the off position.

The State of Wisconsin brought criminal charges against Judge, Balster, and Mann. The three were charged with second degree reckless homicide, endangering safety by use of a dangerous weapon, and battery. On July 13, 1993, the three pled no contest on all counts. However, the Wisconsin court accepted the no contest pleas on only the endangering safety and battery counts. The court deferred acceptance of the reckless homicide no contest pleas for a period of three years with the proviso that if they engaged in any criminal conduct within three years, the court would accept those pleas without a hearing and would sentence the defendants accordingly.

Maurice A. Meyer, as trustee for the heirs of Christopher M. Meyer, has brought a wrongful death action against Balster, Judge, Mann, and Axelrod in Dakota County District Court. Balster and Judge have tendered the defense of that action to their respective insurance companies. Balster's parents have a homeowner's insurance policy with Secura Insurance Company and Judge's parents have a homeowner's policy with Tower Insurance Company. There is no dispute that Balster and Judge qualify as insureds under these policies. Both policies provide that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury ... caused by an occurrence," coverage is available. Affidavit of Susan Thurmer Exh. 13 at 11; Affidavit of Dale M. Wagner Exh. 12 at 10. "Occurrence" means an "accident" which results in bodily injury. Thurmer Aff. Exh. 13 at 1; Wagner Aff. Exh. 12 at 1. However, the policies do not define "accident." The policies also contain several coverage exclusions. Most important, the original policies "do not apply to bodily injury ... which is *expected or intended* by the insured." Thurmer Aff. Exh. 13 at 12; Wagner Aff. Exh. 12 at 11 (emphasis added). Secura subsequently amended its policy to broaden the exclusions for bodily injury "which: (1) is expected or intended by an insured; (2) may reasonably be expected to result from the intentional acts of an insured; or (3) result from the criminal acts of an insured." Thurmer Aff. Exh. 13. Tower did not amend its policy similarly.

The insurance companies have undertaken Balster's and Judge's defenses in the wrongful death action in state court subject to a reservation of rights. Secura and Tower filed these declaratory judgment actions seeking declarations that the policies do not provide coverage.[2] In their complaints, Tower and Secura name Balster, Judge, Mann, Axelrod, and Meyer's estate as defendants. Secura and Tower have now moved for summary judgment in their respective actions. Meyer's estate has filed memorandums in opposition to both Secura's and Tower's motions. Judge, insured by Tower, has filed a

---

1. Meyer's blood alcohol content at the time of death was 0.211.

2. The cases were consolidated by order of the Court.

memorandum in opposition to Tower's motion, but Balster, insured by Secura, has not filed a memorandum in opposition to Secura's motion.[3] In addition to responding to the insurance companies' motions, Meyer's estate has filed cross-motions for summary judgment in both actions, and Judge has cross-moved for summary judgment in Tower's action.

## DISCUSSION

### I. Summary Judgment Standard

■■■ A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." AgriStor Leasing, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir.1987), cert. denied, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### II. Minnesota Law

■■■ An intentional act exclusion in a homeowner's policy applies only if the insured acts with intent to cause bodily injury. Questions of intent are generally decided by the courts. See Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 887 (Minn.1978). Intent may be established in one of two ways. First, the necessary intent may be established by proof of an insured's actual intent to inflict injury. Caspersen v. Webber, 298 Minn. 93, 213 N.W.2d 327, 330 (1973). Second, if evidence of actual intent is lacking, intent may be inferred as a matter of law if the insured's acts are of a calculated and remorseless character. Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121, 126 (1976). When there is either actual intent to inflict bodily injury or such an intent can be inferred as a matter of law, the intentional act exclusion applies even if the injury caused is more severe or of a different nature than the injury intended. Stone, 269 N.W.2d at 887. The purpose of the intentional act exclusion is to deny the insured license to commit wanton and malicious acts. American Family Mutual Ins. Co. v. Peterson, 405 N.W.2d 418, 422 (Minn.1987); Smith v. Senst, 313 N.W.2d 202, 204 (Minn.1981).

#### A. Actual Intent to Injure

■■ The intentional act exclusion applies if there was an actual intent to cause bodily injury. The case law establishes that this requires more than just an intent to act. The leading case on the issue of actual intent is Caspersen v. Webber, 298 Minn. 93, 213 N.W.2d 327 (1973). In Caspersen, the plaintiff was employed as a hatcheck girl at a restaurant. The defendant, the insured, was unable to find his claim check. The defendant asked plaintiff for permission to look for his coat, but she refused. Defendant then pushed plaintiff aside and entered the checkroom. Plaintiff lost her balance, struck her

---

**3.** At oral argument, Balster's attorney stated that he would rely on the memorandums submitted by Meyer's estate.

back against a metal rack attached to the wall, and was injured. The plaintiff brought an action against the defendant alleging both assault and negligence. Defendant impleaded the insurance company that had issued him a homeowner's policy. The policy contained an intentional act exclusion. The trial court found that the intentional injury exception applied and barred coverage but the Minnesota Supreme Court reversed. The court held that an assault and battery is not within the exclusion unless a reason for the act is to inflict bodily injury. The court found that in that case, while there was evidence of an intent to act, there was no evidence of intent to cause injury and thus the exclusion did not apply.

In other cases, an actual intent to injure has been found. In *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978), the insured, a sixteen-year-old, had a chance encounter with a person with whom he had had prior run-ins. The two decided to "settle" things. The insured wrapped a belt around his hand and then struck the other boy in the temple, inflicting a serious injury. The injured boy sued. The insurance company brought a separate action seeking a declaration that it was not obligated to provide coverage because of an intentional act exclusion in the insured's homeowner's policy. The trial court ruled in favor of the insurance company based upon the intentional act exclusion and an appeal ensued. In affirming the trial court, the Minnesota Supreme Court wrote that:

> The "intent" required to exclude coverage is neither the "intent *to act*" nor the "intent to cause the *specific* injury complained of." Rather it is the "intent to *cause bodily injury*" even if the actual injury is more severe or of a different nature than the injury intended.

*Id.* at 887 (emphasis in original). The court found that it was clear that the insured intended to inflict injury and thus coverage was properly excluded.

In *Hartford Fire Ins. Co. v. Wagner*, 296 Minn. 510, 207 N.W.2d 354 (1973), two teenagers, one of them the insured, committed a number of burglaries. When the police began to suspect one of the teenagers, he proposed that the two stage a shooting in an attempt to deflect suspicion. More specifically, the suspected teenager proposed that the insured shoot him and then the two would attribute the shooting to persons who they would later claim were the actual burglars. To that end, the insured fired a rifle at the suspected teenager's stomach, intending only to wound him. Instead, the shot killed him. In finding that the intentional act exclusion applied, the Minnesota Supreme Court recognized that the injury was intended but the severity was not. Nevertheless, the court found that the exclusion applied. The court wrote that "[u]nder such circumstances, we find no compelling reason either as a matter of public policy or as a matter of law to hold the exclusion inapplicable." *Id.* at 355.

■ In sum, the case law establishes that to show actual intent there must be more than a mere intent to act; there must be an intent to cause bodily injury. If such intent exists, actual intent is established even if the resulting injury is more severe or of a different nature than that intended.

### B. *Intent Inferred as a Matter of Law*

A large portion of the case law has addressed the issue of when, in the absence of actual intent, it is appropriate to infer intent to commit bodily injury as a matter of law. The leading case on inferred intent is *Continental Western Ins. Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976). In *Toal*, a group of individuals which included the two insureds planned to commit armed robbery at a bowling alley. On the night of the robbery, one of the insureds, as well as other participants, brought a gun with him to the bowling alley. The evidence established that although the group did not plan to shoot anyone, they did intend to threaten people with the guns and to use the guns if necessary to accomplish the robbery. During the robbery, the insured who was carrying a gun struck an employee on the head with the butt of the gun and the gun discharged. The bullet did not strike anyone. Another participant in the robbery then shot and killed the same employee. The other insured never

entered the bowling alley; he waited in the getaway car with the motor running.

The employee's widow brought a wrongful death action against the participants in the robbery, including the insureds. The insurance companies then brought declaratory judgment actions seeking a ruling that the intentional act exclusion applied. The trial court ruled in favor of the insurance companies and the insureds appealed. The Minnesota Supreme Court affirmed. The court concluded that although neither of the insureds actually fired the shot which killed the employee, an intention to inflict injury could be inferred as a matter of law. The court wrote that:

This is not a case like *Caspersen* where an impulsive albeit intentional, act results in an unintended injury. The insured in *Caspersen* would never have pushed the hat-check girl had he known beforehand that it would result in a serious injury to her. In contrast, the facts in the instant case compel the conclusion that the insureds followed through with the armed robbery with knowledge that someone might well be injured or killed in the process. The robbery was a well planned operation. The insureds knew that several of the participants would be carrying loaded guns.... In short, the insureds intentionally prepared themselves to inflict serious injury in order to facilitate the armed robbery. Thus, we find the insureds' acts to be of such a *calculated and remorseless character* that we infer an "intention to inflict an injury" as a matter of law.

*Id.* at 126 (emphasis added).

Subsequent cases have applied the "calculated and remorseless" standard established in *Toal*. In *Woida v. North Star Mutual Ins. Co.,* 306 N.W.2d 570 (Minn.1981), the insured and several others went to a construction site and fired a rifle at a truck the group knew was occupied by security guards. The shots caused the windshield to shatter and fragments to strike one of the guard's hands and face. The guard brought an action against the insured, and the insured commenced a separate action against his insurance company seeking a declaration of rights under his insurance policy. The trial

court granted the insurance company's motion for summary judgment on the basis of the intentional act exclusion. The insured appealed and the Minnesota Supreme Court affirmed. The court noted that the participants planned to go to the construction site and shoot at the truck, they armed themselves with high-powered rifles, and they knew that the truck was occupied when they fired the shots. The court held that under those circumstances an intent to cause bodily injury could be inferred as a matter of law.

The Minnesota Court of Appeals has also had occasion to infer an intent to injure as a matter of law. In *Auto–Owners Ins. Co. v. Smith,* 376 N.W.2d 506 (Minn.Ct.App.1985), the insured worked as a bartender. One evening, after his shift ended at 5:00 p.m., the insured elected to remain at the bar to drink. The insured left the bar at approximately 1:45 a.m. with a fellow employee who had told the insured that she was being physically threatened by another man. The two drove past the man's house and the insured, observing a light on upstairs, proceeded to fire four shots from a handgun into an unlit room on the lower level of the house. One of the shots struck and killed a woman who was sleeping on a sofa on the lower level. The estate brought a wrongful death action against the insured. The insurance company then brought a declaratory judgment action. Although the insured argued that his only intent was to scare the man who had been making the threats and that was why he fired into a darkened room on the lower level, the trial court granted the insurance company's motion for summary judgment on the ground that intent to injure could be inferred as a matter of law. The Minnesota Court of Appeals affirmed. The court began by agreeing that there was no actual intent to injure a particular individual. Nevertheless, the court stated that the insured's "conduct reaches the level of conduct which the Minnesota Supreme Court characterized in *Toal* and *Woida* as so remorseless as to require an inference of intent to inflict bodily injury." 376 N.W.2d at 510.

Similarly, in *Donovan v. Commercial Union Ins. Co.,* 493 N.W.2d 581 (Minn.Ct.App. 1992), the court inferred an intent to injure

when a gunshot caused an unintended injury. In *Donovan,* the insured and his wife got into an argument. After the insured's wife left the house, the insured loaded a handgun and sat in a chair in the living room, despondent and contemplating suicide. A short time later, the insured's wife returned to get her purse. The insured then decided to attempt to frighten her. The insured aimed the gun slightly off to one side of her and pulled the trigger. However, just as the insured pulled the trigger, his wife moved into the line of fire and was struck in the elbow. When the woman sued, the insurance company refused to provide a defense based on the intentional act exclusion. When the insured filed a declaratory judgment action, the trial court granted the insurance company's motion for summary judgment. The court of appeals affirmed. The court stated that while it was possible that no intent to injure would be inferred if the gun had been fired accidently, because the insured intentionally fired the gun, an inherently dangerous instrumentality, an intent to injure could be inferred as a matter of law.

■ In short, the case law establishes that an intent to injure will be inferred as a matter of law where the insured's conduct is of such a calculated and remorseless character that public policy requires that coverage be denied. Although this determination is made by courts on a case-by-case basis, inferred intent has most often been found in cases involving firearms.

## C. Questions of Law and Questions of Fact

■ Questions of intent are generally decided by the courts. *See Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn. 1978). However, there is an exception if a genuine factual issue exists as to whether an act that otherwise appears to have been intended to inflict bodily injury might really have been an instinctive and reflexive reaction to a threatening situation. For example, in *Farmers Ins. Exchange v. Sipple,* 255 N.W.2d 373 (Minn.1977), the insured was a highway construction worker. While the insured was working on a new road, a farmer approached the insured and complained that

the road was creating drainage problems on his land. After a heated exchange, the insured struck the farmer. The Supreme Court held that the trial court properly submitted to the jury the issue whether the injury caused was "expected or intended" because there was evidence that the insured struck the farmer as the farmer was about to strike him. Thus, the court held that it was appropriate for the jury to decide whether the insured had any time to form intent, or rather whether he acted instinctively.

In a similar case, *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822 (Minn.1980), the insured misplaced an airline baggage claim check. The insured took his bag past the baggage claim without producing a check and the baggage clerk pursued him. A tug-of-war ensued over the bag and the insured suffered a deep cut on a finger. The insured then struck the baggage clerk. The baggage clerk sued. Once again, the intentional act exclusion was at issue. The Minnesota Supreme Court held that in that case the trial court properly submitted the issue of intent to injure to the jury because of evidence that the insured's act was reflexive and in self-defense.

Cases since *Sipple* and *Brown* indicate that the question of intent should be submitted to a jury only in unusual situations. In *Smith v. Senst,* 313 N.W.2d 202 (Minn.1981), the Minnesota Supreme Court attempted to clarify its holdings in *Sipple* and *Brown.* In *Smith,* the insured spent an evening drinking heavily with a group of friends at a bar. The group also smoked out of a marijuana pipe at the bar and continued to do so after being told repeatedly by the bartender to stop. The bartender then attempted to take the pipe away. During a struggle, the pipe fell to the ground. The insured grabbed hold of the bartender and pulled him away from the pipe, at which point an onlooking customer came to the bartender's aid and pushed the insured several feet away. The insured returned and struck the customer, fracturing his jaw. The customer sued. The trial court held that the intentional act exception did not apply and that the insured's homeowners policy provided coverage. The Minnesota Supreme Court reversed. The court distin-

guished *Brown* and *Sipple* on the grounds that the insured's act in *Smith* lacked the spontaneity inherent in a reflex action. The court found that intent to injure existed as a matter of law and the intentional act exception provided grounds for denying coverage.

Following the guidance of *Smith*, the Minnesota Court of Appeals has also indicated that submission of the issue of intent to a jury is appropriate only in limited circumstances. In *Economy Fire & Cas. Ins. Co. v. Meyer*, 427 N.W.2d 742 (Minn.Ct.App.1988), the insured, after drinking heavily, visited his girlfriend at her house, unaware that she had a male visitor who was asleep in her bed. When the insured discovered the man, he ran to the kitchen, grabbed a butter knife, and returned and stabbed the sleeping man in the abdomen. The injured man sued. When the insurance company brought a declaratory judgment action, the trial court granted its motion for summary judgment based on the intentional act exclusion. On appeal, the court of appeals affirmed, refusing to accept the insured's argument that a factual question existed as to whether the stabbing was an instinctive and reflex action.

In *Haarstad v. Graff*, 506 N.W.2d 341 (Minn.Ct.App.1993), the insured arrived unexpectedly at the home of his girlfriend at 4:00 a.m. As the woman went to answer the door, another man who had been staying over night hid in a spare bedroom. The insured eventually discovered the man and struck him several times in the face. When the injured man sued, the insurer sought to deny coverage on the basis of the intentional act exclusion. The insured argued, however, that his actions were instinctive and reflexive and thus he did not have time to form the requisite intent. A jury trial was held on the issue of whether the insured expected or intended to cause bodily injury and the jury returned a verdict in favor of the insured. The insurance company appealed and the court of appeals reversed. The court reasoned that as a matter of public policy it could not condone "frontier justice" and held that the intentional act exclusion applied as a matter of law.

In sum, the case law establishes that if an insured offers sufficient evidence that he or she inflicted bodily injury as an instinctive and reflexive reaction to a threatening situation, the question of intent should be decided by the jury. In all other cases, the question of intent is one for the court.

### III. *The Parties' Arguments*

Secura's and Tower's arguments generally mirror each other, as do the arguments of the defendants. Thus, the Court will distinguish between the arguments made by the various parties only where it is necessary to do so.

The insurance companies present four basic arguments. First, the insurance companies argue that the Court need not even interpret the policies' exclusions because this case does not involve a claim "for damages because of bodily injury ... caused by an occurrence." Thurmer Aff. Exh. 13 at 11; Wagner Aff. Exh. 12 at 10. The insurance companies point out that "occurrence" means an "accident" which results in bodily injury. Thurmer Aff. Exh. 13 at 1; Wagner Aff. Exh. 12 at 1. The insurance companies argue that defendants cannot meet their burden of establishing that Meyer's death was an "accident."

Second, the insurance companies assert that the intentional act exclusions apply because there is direct evidence of actual intent to injure. The insurance companies point out that there is no dispute that defendants intended to electrically shock Meyer. The insurance companies argue that a shock qualifies as a temporary bodily injury and the fact that the harm that actually resulted was more severe than that intended does not negate the intentional character of the act. To support this argument, the insurance companies cite the defendants' deposition testimony in which they admitted that they intended to cause sufficient discomfort to Meyer to wake him, even though they intended that discomfort to be temporary.

Third, the insurance companies assert that the intentional act exclusions apply because defendants' reckless misuse of an inherently dangerous instrumentality, electricity, compels an inference of intent to injure as a matter of law. The insurance companies

point out that Balster, Judge, and Mann entered no contest pleas to the charges of reckless homicide, endangerment of safety with a dangerous weapon, and battery.[4] The insurance companies argue that defendants' conduct was of a calculated and remorseless character and therefore the Court need not conclude that they had any actual intent to injure Meyer.

Fourth, Secura argues that the criminal act exclusion in its policy applies.[5] Secura argues that Judge's, Mann's, and Balster's pleas in the criminal case in Wisconsin collaterally estop relitigation of the issue whether Meyer's death was the result of a criminal act. Secura argues that under this exclusion, unlike the intentional act exclusion, there is no requirement of an intent to inflict injury. Rather, Secura asserts that the exclusion applies if there is proof of the commission of a criminal act. Secura cites several cases from other jurisdictions to support this argument. *E.g. Allstate Ins. Co. v. Schmitt*, 238 N.J.Super. 619, 570 A.2d 488 (App.Div.1990); *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001 (1990). Secura also asserts that the criminal act provision is not contrary to public policy, citing those same cases.

Defendants respond to each of the insurance companies' arguments. First, defendants argue that Meyer's death was the result of an "occurrence" within the meaning of the insurance policies. Defendants point out that an "occurrence" is an "accident" causing bodily injury, and argue that an "accident" is merely a happening that is unexpected or unintended. Thus, defendants argue, it is not necessary to separately interpret this provision. Rather, defendants assert, the analysis is precisely the same as the analysis of the intentional act exclusion. Defendants admit that the group acted intentionally, but argue that the relevant inquiry is whether Meyer's injury was intended.

Second, defendants argue that the intentional act exclusions do not apply because there was no actual intent to injure Meyer. Defendants assert that when Judge was asked whether the shock would hurt Meyer,

he concluded that it would not because he assumed that Meyer would experience the same brief shock and sensation that the group experienced when they tested the wire. Moreover, defendants assert, Judge possessed a general belief that brief shocks from a household current were harmless. Defendants maintain that the group then relied upon Judge's judgment that Meyer would not be harmed. Defendants also contend that they were unaware that current would flow through Meyer while the switch was in the off position. In their final objection to a finding of actual intent, defendants challenge the insurance companies' position that intent to inflict temporary minor discomfort establishes an intent to inflict bodily harm.

Third, defendants argue that an intent to injure cannot be inferred as a matter of law in this case. Defendants assert that such an inference is appropriate only where the character of the act is found to be wanton or malicious. Defendants point out that to date courts have inferred such intent only in cases of physical attack or where a firearm was involved. Defendants are willing to concede that their conduct was reckless, but they contend that it does not qualify as wanton or malicious.

Fourth, defendants argue that the criminal act exclusion in Secura's policy does not apply. Defendants contend that this provision is overly broad and must be narrowly construed against Secura. Defendants argue that the criminal act exclusion cannot be held to apply to crimes in which intent to commit bodily harm is not an element and assert that none of the crimes to which Balster pled guilty contain an element of intent to commit bodily harm. Defendants further argue that even if the Court found that the criminal act exclusion might apply in this case, a genuine issue of fact exists because Secura must step into the shoes of a criminal prosecutor and prove beyond a reasonable doubt that Balster committed the crimes with which he was charged. Defendants argue that Secura can-

---

4. The insurance companies fail to point out, however, that the court did not accept the pleas on the reckless homicide charges.

5. Again, the criminal act exclusion is not found in Tower's policy.

not rely on collateral estoppel because the issue was not actually litigated—rather, Balster pled no contest. Finally, defendants argue that Balster's no contest plea may not be used as evidence in this civil proceeding.

## IV. Analysis

### A. Coverage and the Intentional Act Exclusion

Both Tower's and Secura's policies provide coverage for claims "brought against an insured for damages because of bodily injury ... caused by an occurrence." Thurmer Aff. Exh. 13 at 11; Wagner Aff. Exh. 12 at 10. The policies define "occurrence" as an "accident" which results in bodily injury. Thurmer Aff. Exh. 13 at 1; Wagner Aff. Exh. 12 at 1. The policies do not define "accident." "The word, however, has a generally understood meaning. As any dictionary says, an accident is simply a happening that is *unexpected and unintended*." *McIntosh v. State Farm Mutual Auto. Ins. Co.*, 488 N.W.2d 476, 478 (Minn.1992) (emphasis added). Similarly, the policies specifically exclude coverage for bodily injuries which are "expected or intended." Thus, the Court concludes that the question whether Meyer's death was an "accident" and the question whether the intentional act exclusions apply are, for all practical purposes, identical issues.[6]

### 1. Actual Intent

■■■ There is no evidence in this case of any actual intent to injure. As a general rule, when the act itself is intended but the resulting injury is not, the intentional act exclusion does not apply. *Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327, 330 (1973). The facts of this case fall squarely within the *Caspersen* rule. Before connecting the wires, the group specifically discussed whether shocking Meyer might injure him. The group's conclusion, although tragically incorrect, was that Meyer would not be harmed. Once the group realized their error, they frantically attempted to revive Meyer and immediately took him to the hospital. The Court is also unpersuaded by the insurance companies' argument that the tempo-

rary discomfort associated with a typical shock from an electrical outlet is sufficient to constitute "bodily injury." Not only have the insurance companies failed to offer any legal authority in support of that argument, the argument is not supported by the terms of the policies. The policies define "bodily injury" as "bodily harm, sickness or disease." Thurmer Aff. Exh. 13 at 1; Wagner Aff. Exh. 12 at 1. If language in a insurance policy is susceptible to more than one reasonable interpretation, it is ambiguous and doubts are resolved in favor of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn.1979). The Court finds that the policies' definition of "bodily injury" is ambiguous and, resolving all doubts in favor of the insureds, the Court concludes that momentary discomfort associated with an electrical shock does not constitute "bodily injury" within the meaning of the policies. In short, the fact that defendants intended to shock Meyer does not establish that they intended to cause him bodily injury.

■■■ Moreover, the Court finds actual intent lacking as a matter of law. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978). The only time intent to inflict injury is a question for the trier of fact is if there is a factual dispute as to whether the insured had time to form the requisite intent, or rather acted instinctively in the form of a reflex or in self-defense. *Smith v. Senst*, 313 N.W.2d 202 (Minn.1981); *Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980); *Farmers Ins. Exchange v. Sipple*, 255 N.W.2d 373 (Minn.1977). No such issue exists in this case. The undisputed facts in this case establish as a matter of law that defendants did not actually intend to inflict bodily injury on Meyer. *Stone*, 269 N.W.2d at 887.

### 2. Inferring Intent as a Matter of Law

■■■ The Court also concludes that defendants' actions were not of such a character that an intent to injure should be inferred as a matter of law. Courts may infer an intent

---

6. The only complicating factor is which party bears the burden of proof. The Court need not address this issue, however, because as the fol-

lowing discussion will make clear, no matter how the burden of proof is allocated, defendants are entitled to judgment.

to injure only if the insured's acts are of a "calculated and remorseless character." *Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121, 126 (1976). Acts are "calculated and remorseless" only if they are such that harm is substantially certain to occur. *State Farm Fire & Cas. Co. v. Wicka,* 474 N.W.2d 324, 329 (Minn.1991). *See also Toal,* 244 N.W.2d at 125 n. 3 (must be a "high degree of certainty" that the harm will occur). Although this determination of whether an act is calculated and remorseless is made on a case-by-case basis, to date the Minnesota Supreme Court has inferred such an intent only in cases involving a physical assault or the use of a firearm. *E.g. Toal,* 244 N.W.2d 121 (person shot and killed during robbery); *State Farm Fire and Cas. Co. v. Williams,* 355 N.W.2d 421 (Minn.1984) (sexual assault).

 In this case, it is undisputed that defendants were attempting a prank on Meyer. Even with the benefit of hindsight, the Court cannot say that there was a high degree of certainty that defendants' actions would cause permanent injury to Meyer. In other words, the Court concludes that defendants did not act with an apparent indifference toward the consequences of their actions. Rather, they decided to carry out a prank after specifically discussing possible dangerous consequences. The fact that defendants' assessment of the dangers was incorrect is insufficient in itself to categorize their actions as calculated and remorseless. In deciding not to infer intent as a matter of law, the Court notes the purpose of the intentional act exclusion, which is to deny the insured license to commit malicious acts. *American Family Mutual Ins. Co. v. Peterson,* 405 N.W.2d 418, 422 (Minn.1987); *Smith v. Senst,* 313 N.W.2d 202, 204 (Minn.1981). The Court concludes that purpose will not be undermined by a finding that the intentional act exclusion does not apply to the facts of this case.

## B. *The Criminal Act Exclusion*

There remains the question whether the criminal act exclusion in Secura's policy applies to bar coverage for Balster. Resolution of this question requires the Court to ad-

dress three issues: (1) whether the literal terms of the criminal act exclusion apply; (2) if the literal terms of the exclusion apply, whether there is sufficient evidence that a criminal act occurred; and (3) if there is sufficient evidence that criminal act occurred, whether the exclusion does not apply because it is in conflict with the reasonable expectations of the parties.

### 1. *The Literal Terms of the Exclusion*

 If language in an insurance policy is susceptible to more than one reasonable interpretation, it is ambiguous and doubts are resolved in favor of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 34 (Minn.1979). However, the Court may not read an ambiguity into an insurance contract where none exists. *State Farm Ins. Companies v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992). The criminal act exception in Secura's policy is not ambiguous. The policy excludes coverage for bodily injury "which: (1) is expected or intended by an insured; (2) may reasonably be expected to result from the intentional acts of an insured; *or* (3) result from the criminal acts of an insured." Thurmer Aff. Exh. 13 (emphasis added). The plain language of the exclusions makes clear that while intent is relevant to the first and second exclusions, Secura drafted the policy so that intent would not be required for the criminal act exclusion to apply. Thus, the language read literally, bars recovery for injuries that are the result of criminal acts, whether intentional or not. *See, e.g., Allstate Ins. Co. v. Norris,* 795 F.Supp. 272, 276 (S.D.Ind.1992) (listing cases finding exclusion applies to unintentional criminal acts).

### 2. *Evidence of Criminal Act*

 Secura still must establish that Balster committed a criminal act. The Court rejects Secura's argument that the criminality of Balster's actions was conclusively determined by his pleas of no contest in Wisconsin. First of all, the Wisconsin state court did not accept Balster's no contest plea on the reckless homicide charge; the court deferred on consideration of that plea and if Balster does not engage in any criminal activity for a period of three years, the charge

will be dropped. Second, with regard to the no contest pleas on the endangering safety and battery charges, Secura's argument overlooks Federal Rule of Evidence 410, which provides that evidence of a no contest plea is not admissible in a subsequent civil proceeding. *See also Walker v. Schaeffer,* 854 F.2d 138, 143 (6th Cir.1988); *Travelers Ins. Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289, 292 (1968) (general rule under Minnesota common law is that criminal judgment is not admissible as evidence in a subsequent civil action). In other words, a no contest plea "cannot be used against the defendant as an admission in any civil suit for the same act." *Bell v. C.I.R.,* 320 F.2d 953, 956 (8th Cir.1963). *See also Matter of Estate of Safran,* 102 Wis.2d 79, 306 N.W.2d 27, 34 (1981).

Because the no contest pleas are not admissible, Secura must point to some evidence in the record that would allow the Court to conclude that Balster's actions were, in fact, criminal. *Allstate Ins. Co. v. Tankovich,* 776 F.Supp. 1394, 1398–99 (N.D.Cal.1991). Balster has admitted in a deposition that he participated in connecting the speaker wire to Meyer and he personally turned the light switch on and off one or two times. Deposition of Brent Balster at 106. The autopsy determined that Meyer died as a result of electrocution. The Court will assume, without deciding, that this evidence is enough to establish that Balster committed an unintentional criminal act—be it reckless homicide, endangering safety, or battery—and that the criminal act exception therefore, read literally, applies to the facts of this case.

### 3. *Reasonable Expectations of the Insured*

The last issue is whether the criminal act exclusion should be enforced in this case. It is well settled that exclusions in insurance contracts are read narrowly against the insurer. *State Farm Ins. Co. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992); *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn. 1989); *Atwater Creamery Co. v. Western Nat'l Mutual Ins. Co.,* 366 N.W.2d 271, 276 (Minn.1985); *Glarner v. Time Ins. Co.,* 465 N.W.2d 591, 596 (Minn.Ct.App.1991). "The terms of an insurance policy should be construed according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to mean." *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn. 1977).

In *Atwater Creamery Co. v. Western Nat'l Mutual Ins. Co.,* 366 N.W.2d 271 (Minn.1985), the Minnesota Supreme Court adopted the reasonable expectations doctrine. In *Atwater Creamery,* the court held that because of unequal bargaining power and a lack of expertise on the part of insureds, the objectively reasonable expectations of insureds will be honored even if painstaking study of the policy provisions would have negated those expectations. *Id.* at 277 (citing Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 Harv. L.Rev. 961, 967 (1970)). In other words, a court need not enforce the literal terms of a policy exclusion if those terms are contrary to the reasonable expectations of the insured. The "reasonable-expectations doctrines gives the court a standard by which to construe insurance contracts without having to rely on arbitrary rules which do not reflect real-life situations and without having to bend and stretch those rules to do justice in individual cases." 366 N.W.2d at 278.

The Court finds that application of the criminal act exclusion to the facts of this case would violate the reasonable expectations of the Balsters, the insureds. It is objectively reasonable to expect that the criminal act exclusion would not apply unless bodily injury was a reasonably expected result of the act. The Court is influenced by *Allstate Ins. Co. v. Zuk,* 78 N.Y.2d 41, 574 N.E.2d 1035, 571 N.Y.S.2d 429 (1991), a case which also involved the accidental killing of a friend. In *Zuk,* the insured was cleaning and loading a shotgun when it accidently discharged, killing a friend who was sitting a few feet away. The insured pled guilty to second degree manslaughter for recklessly causing his friend's death. The estate filed a wrongful death action and Allstate brought a declaratory judgment action. The homeowner's policy at issue excluded from coverage "bodily injury or property damage which

may reasonably be expected to result from the intentional or criminal acts of an insured person." 574 N.E.2d at 1036, 571 N.Y.S.2d at 430. The New York Court of Appeals held that while the guilty plea established that the death was caused by a criminal act, it did not establish that the death was necessarily one that could "reasonably be expected to result" from a criminal act. The court stated that:

> A person may engage in behavior that involves a calculated risk without expecting—no less reasonably—that an accident will occur. Such behavior, which may be reckless for criminal responsibility purposes, does not necessarily mean that the actor reasonably expected the accident to result. *People classically seek insurance coverage for just such circumstances.*

574 N.E.2d at 1038, 571 N.Y.S.2d at 432 (emphasis added, citations omitted). Although the policy language in *Zuk* specifically provided that the injury must be a reasonably expected result of a criminal act, the Court will imply such a requirement in the case at bar as within the reasonable expectations of the insureds. *Atwater*, 366 N.W.2d at 277 ("objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations").

■ Moreover, the Court concludes that public policy favors a narrow construction of the criminal act exclusion. Balster's conduct was not inherently criminal but rather was criminal only because of the tragic result. The Court is convinced that it would be bad policy to find that the exclusion applies in

this case just because the state of Wisconsin decided to pursue criminal charges. *See Hartford Fire Ins. Co. v. Wagner*, 296 Minn. 510, 207 N.W.2d 354, 355 (Minn.1973). Persons who suffer unintended and unexpected injuries should not be denied compensation because of such a discretionary decision by the state.

■ In short, although the criminal act exclusion, interpreted as Secura intended, would proscribe coverage, the Court finds that the exclusion is unenforceable in this case. *See Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977). Ambiguity is not a condition precedent to application of the reasonable expectations doctrine. *Atwater Creamery*, 366 N.W.2d at 278. The facts of this case present a situation for which people classically seek insurance coverage, *Zuk*, 574 N.E.2d at 1038, 571 N.Y.S.2d at 432, and the Court concludes that a denial of coverage would conflict with the reasonable expectations of the insureds.[7] Therefore, judgment will be entered in favor of defendants.[8]

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

**IT IS ORDERED** that:

1. plaintiff Secura Insurance Company's motion for summary judgment in CIVIL 4–93–722 is denied;

2. plaintiff Tower Insurance Company's motion for summary judgment in CIVIL 4–93–273 is denied;

3. defendant John P. Judge's motion for summary judgment in CIVIL 4–93–273 is granted;

---

7. The Court also notes that the criminal act exclusion was added to Balster's insurance policy by way of amendment. In Minnesota, when an insurer reduces coverage, the insurer has a duty to point out the reduction in coverage to the insured and offer to explain to the insured the significance of the changes. *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 575 (Minn.1977). An insurer should not be able to take advantage of hidden and unexplained gaps in coverage created by amendments to the policy. *Id.* If the insurer does not adequately fulfill its duty of disclosure, any question of coverage shall be determined in accordance with the terms of the original policy prior to the amend-

ment. *Id.* In this case, there is no evidence that Secura made any effort to explain, much less point out, to the Balsters the reduction in their coverage.

8. Two other motions are before the Court. First, Tower has moved for default judgment against Mann. Because the Court will enter judgment in favor of defendants, the Court will not address Tower's motion for default judgment. Second, Judge seeks an award of costs and attorneys' fees incurred in connection with this declaratory judgment action. That motion will be denied.

4. defendant Maurice A. Meyer's, trustee for the heirs of Christopher M. Meyer, motion for summary judgment in CIVIL 4–93–722 and CIVIL 4–93–273 is granted;

5. Secura Insurance Company shall defend and indemnify Richard B. Balster and Tower Insurance Company shall defend and indemnify John P. Judge in the underlying wrongful death action brought by Maurice A. Meyer, trustee for the heirs of Christopher M. Meyer; and

6. defendant John P. Judge's request for attorneys' fees and costs is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**