OPINION OF THE COURT
David Demarest, J.
Following a night of “partying” which included drinking alcoholic beverages and smoking marihuana, the defendant Joseph G. France picked up a 20-gauge shotgun from the floor of a cabin in which he and the plaintiff were staying, pointed it at the plaintiff and pulled the trigger. It discharged, causing plaintiff severe injuries.
The incident took place on premises owned by France’s grandmother, with whom he was living at the time. France subsequently pleaded guilty to assault in the second degree pursuant to Penal Law § 120.05 (4) admitting he “recklessly” caused serious physical injury by means of a deadly weapon. France has steadfastly maintained that he did not know the gun was loaded and that he never intended any harm to the plaintiff, whom at the time was his best friend.
Plaintiff commenced an action for money damages against France, who defaulted in appearance, leading to the entry of a default judgment on liability.
Defendant Security Mutual Insurance Company (Security) had issued a letter of disclaimer denying it had a duty to defend or indemnify France. It cites exclusions in the policy for intentional acts or for instances, occurrences or allegations of criminal activity by the insured. This action was then commenced on May 6, 1997 seeking a declaration that Security does have a duty to defend and indemnify. Security’s answer alleges, in addition to the exclusions asserted in its disclaimer letter, that the policy did not provide coverage for France. Plaintiff now moves for summary judgment on the issue of coverage.
Several basic principles of insurance law must be considered in determining coverage. The duty to defend is broader than *690 the duty to indemnify; a defense must be afforded if potentially, and even if only partially, the complaint contains any facts or allegations that might involve covered claims; the merit of the claims need not be explored for truth, basis or substance as long as there is some possible factual or legal basis which brings the allegations within the scope of coverage; an insurer will be relieved of its duty to defend upon demonstrating the complaint’s allegations cast that pleading solely and entirely within a policy exclusion and that there is no other possible way to interpret the allegations so as to afford coverage; public policy bars coverage of intended injuries resulting from a violation of penal law; and, finally, terms are given their ordinary meaning while ambiguous terms are interpreted in the insured’s favor. (Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148 [1948]; Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66 [1989]; International Paper Co. v Continental Cas. Co., 35 NY2d 322 [1974]; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304 [1984]; Spoor-Lasher Co. v Aetna Cas. & Sur. Co., 39 NY2d 875 [1976]; Federal Ins. Co. v Cablevision Sys. Dev. Co., 637 F Supp 1568 [ED NY 1986]; Ruder & Finn v Seaboard Sur. Co., 52 NY2d 663 [1981].)
Was Joseph France an “insured” under the terms of the policy?
The policy herein was issued to France’s grandmother, who was an owner of the property upon which the incident occurred. At the time he was residing on the premises, either in the main dwelling or in a cabin without power and running water. Rent may have been paid for him through benefits received from the St. Lawrence County Department of Social Services.
Under the terms of the policy: “Insured means you and, if residents of your household, your relatives, and any other person under the age of 21 in your care or in the care of your resident relatives.”
It is not controverted that France was the policyholder’s grandson, and thus a relative. His testimony at his deposition is also not challenged that he had a room, slept, showered and ate there and stored everything he owned there. Nothing in the policy can be construed to abrogate the definition of insured by virtue of a relative paying rent, even were it to be conclusively shown he did so.
It is found that Joseph G. France is an “insured” as that term is defined in the policy.
*691 Is coverage precluded by virtue of the intentional act exclusion of the policy?
There has been no proof submitted by the defendant to rebut the allegations of the plaintiff that France was unaware the gun was loaded when he pulled the trigger, plaintiff’s injury thus being the unintentional result of his actions. In determining coverage disputes in situations such as presented here, the issue is whether or not the harm was a result of an accident. It is not whether the acts of the insured were accidental or intentional, but whether the harm that resulted was expected or intended by him. (Jubin v St. Paul Fire & Mar. Ins. Co., 236 AD2d 712 [3d Dept 1997].)
It must be determined, from the point of view of the insured, whether the loss was unexpected, unusual or unforeseen, for the damage may well be unintended, though the original act leading to the damage was intentional. (McGroarty v Great Am. Ins. Co., 36 NY2d 358 [1975]; Allegany Co-op Ins. Co. v Kohorst, 254 AD2d 744 [4th Dept 1998].) Thus, one who intentionally fires a loaded shotgun at the door of a nightclub is entitled to coverage because he never intended to harm someone on the other side of the door (Barry v Romanosky, 147 AD2d 605 [2d Dept 1989]), as is one who commits arson for the purposes of collecting fire insurance proceeds but unintentionally causes another to suffer burns. (Allegany Co-op Ins. Co. v Kohorst, supra.)
Where the intentional act causes harm which is inherent in the nature of the act committed, courts have been willing to find that the resulting harm must have been expected or intended. (See, e.g., Pistolesi v Nationwide Mut. Fire Ins. Co., 223 AD2d 94 [3d Dept 1996] [intentional sexual assault causing physical and emotional injuries]; Doyle v Allstate Ins. Co., 255 AD2d 795 [3d Dept 1998] [pushing victim, causing her to fall and break a wrist]; Tomain v Allstate Ins. Co., 238 AD2d 774 [3d Dept 1997] [malicious prosecution causing mental and/or emotional distress].)
It is found, therefore, that France is entitled to coverage since the harm occasioned the plaintiff was an accident, there being no proof that France ever intended to actually shoot plaintiff. Whether or not the result was foreseeable is irrelevant if it was not intended. Security may not disclaim coverage by virtue of its policy exclusion for intentional acts.
*692 Is coverage excluded by virtue of the harm arising out of criminal activity?
Security’s policy contains the following exclusion: “This policy does not apply to liability arising directly or indirectly out of instances, occurrences or allegations of criminal activity by the insured or by employees of the insured named in this policy.”
France’s guilty plea to a crime, Security argues, relieves it of the duty to provide coverage.
Plaintiff argues the language limits the exclusion to the named policyholders since it refers to “the insured” rather than “an insured.” Such an argument is tortuous, at best. Having found France to be an insured under the terms of the policy, it is clear the exclusions apply to him equally as they would to a named insured. The policy language is not ambiguous and should be given its clear meaning.
Plaintiff further argues that to include reckless or negligent conduct which might also be criminal to abrogate coverage would make the exclusion overly broad, against public policy and would not provide minimum protection mandated by Insurance Law § 3420.
The particular language of the Security policy’s criminal activity exclusion has apparently not been previously litigated. However, a similar clause was found not to automatically preclude coverage upon a conviction of a reckless offense. In Allstate Ins. Co. v Zuk (78 NY2d 41, 44 [1991]), excluded from coverage was: “ ‘bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person’ (emphasis supplied).” Based upon this language the Court of Appeals held that a criminal conviction of second degree manslaughter premised upon recklessly causing a death did not collaterally establish the death was “reasonably expected to result” from the acts of the perpetrator. (Supra, at 47.) The Court recognized that a person may engage in behavior that involves a calculated risk without expecting that an accident will occur.
The language here is much broader. It seeks to exclude coverage for all activity arising directly or indirectly out of criminal activity. It does not contain the “reasonably to be expected” language of the Allstate policy. It is clear and unambiguous and does not need judicial interpretation. Under the terms of the policy the exclusion shields the insurer from liability.
Overly broad exclusionary language should not be permitted to foreclose an insured from coverage for precisely the damages *693 he reasonably thought himself insured. Illusory, or nearly so, coverage is not favored at law. Construction of a clause so broad that it would appear to exclude what, as a practical matter, would be some of the largest foreseeable elements of damages would render the coverage nearly illusory. (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356 [1974]; see also, Clarostat Mfg. Co. v Travelers Indem. Co., 115 AD2d 386 [1st Dept 1985].) To construe an insuring clause as incapable of affording coverage for perils reasonably intended, by virtue of exclusionary language, is illogical.
Most personal injuries sustained by one person at the hands of another could easily be found to be “criminal” by applying the definitions of “reckless” and “criminally negligent” conduct as found in the Penal Law. Having found that France’s actions in pulling the trigger of what he believed to be an unloaded gun was accidental rather than intentional, the fact that he has had to face criminal consequences because of the results should not serve to deprive the accident victim of protection. At least one court has construed an exclusionary clause concerning criminal activity to concern only those criminal acts which normally require specific or general intent. (Sledge v Continental Cas. Co., 639 So 2d 805 [La Ct App 1994]; see also, Graham v Jackson Assocs., 84 NC App 427, 352 SE2d 878 [1987]; Tower Ins. Co. v Judge, 840 F Supp 679 [D Minn 1993].)
It is found that the exclusionary clause herein concerning acts arising directly or indirectly out of criminal activity is overly broad and against public policy and should not relieve Security from providing coverage under the particular facts of this case.
It is hereby ordered that the motion of the plaintiff seeking summary judgment for the relief demanded in his complaint is granted and the cross motion of the defendant Security Mutual Insurance Company for summary judgment is denied.